Steven J. Nataupsky (SBN 155913)
steven.nataupsky@knobbe.com
Lynda J. Zadra-Symes (SBN 156511)
lynda.zadrasymes@knobbe.com
Matthew S. Bellinger (SBN 222228)
matt.bellinger@knobbe.com
Daniel C. Kiang (SBN 307961)
daniel.kiang@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA  92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

Attorneys for Plaintiff
MONSTER ENERGY COMPANY

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONSTER ENERGY COMPANY, a Delaware corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>THUNDER BEAST LLC, a District of Columbia limited liability company, and<br><br>STEPHEN NORBERG, an individual,<br><br>    Defendants. | Case No. 5:18-cv-1367<br><br>**COMPLAINT FOR TRADEMARK INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, UNFAIR COMPETITION, AND CANCELLATION OF TRADEMARK REGISTRATION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Monster Energy Company ("Plaintiff" or "Monster") hereby complains of Defendants Thunder Beast LLC ("Thunder Beast") and Stephen Norberg (collectively, "Defendants"), and alleges as follows:

## I.  THE PARTIES

1.     Monster is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 1 Monster Way, Corona, California 92879.

2.     Upon information and belief, Defendant Thunder Beast is a limited liability company organized and existing under the laws of the District of Columbia, and having a place of business at 1110 Congress St NE, Washington, District of Columbia 20002.

3.     Upon information and belief, Defendant Stephen Norberg is an individual residing in Washington, District of Columbia, and is the sole owner and sole officer of Defendant Thunder Beast.

## II.  JURISDICTION AND VENUE

4.     This is an action for: 1) trademark infringement and false designation of origin under 15 U.S.C. § 1125(a); 2) trademark infringement under 15 U.S.C. § 1114; 3) unfair competition arising under California Business & Professions Code § 17200 *et seq.*; 4) California common law unfair competition; and 5) cancellation of U.S. Trademark Registration No. 4,772,758 under 15 U.S.C. § 1119.

5.     The Court has original subject matter jurisdiction over the claims relating to trademark infringement, false designation of origin, and cancellation of Defendant Thunder Beast's trademark registration pursuant to 15 U.S.C. §§ 1116 and/or 1121(a).  The Court also has original subject matter jurisdiction over those claims pursuant to 28 U.S.C. §§ 1331 and 1338, as these claims arise under the laws of the United States.  The Court has supplemental jurisdiction over the claims in this Complaint which arise under state statutory and common

law pursuant to 28 U.S.C. §§ 1338(b) and 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

6.     Defendant Thunder Beast is subject to the personal jurisdiction of this Court because it has committed acts of trademark infringement, false designation of origin, and unfair competition in this Judicial District, including, but not limited to, by using infringing marks in connection with the advertisement, marketing, promotion, sale, and offering for sale of goods to customers in this Judicial District.  Thunder Beast's acts form a substantial part of the transactions, occurrences, events or omissions giving rise to Monster's claims.

7.     Defendant Stephen Norberg is subject to the personal jurisdiction of this Court because he, as the sole owner and sole officer of Defendant Thunder Beast, directed and/or controlled the acts of infringement complained of herein.  Mr. Norberg's direction and control over the acts complained of herein in this Judicial District constituting trademark infringement, false designation of origin, and unfair competition form a substantial part of the transactions, occurrences, events or omissions giving rise to Monster's claims.

8.     In addition, upon information and belief, Defendants also targeted and directed their acts of infringement, false designation of origin, and unfair competition complained of herein towards this Judicial District.   Upon information and belief, Defendants knew and intended that their actions complained of herein would cause injury to Monster, and that such injury would be felt greatest in California and in this Judicial District, where Defendants knew Monster has its principal place of business.

9.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) at least because a substantial portion of the transactions, occurrences, events or omissions complained of herein took place in this Judicial District.

### III.  COMMON ALLEGATIONS FOR ALL CLAIMS OF RELIEF

**A.      Monster's Trademarks**

10.    Monster is a nationwide leader in the business of developing, marketing, selling, and distributing beverages.  Monster has achieved extensive exposure and widespread recognition of its MONSTER™ brand through its extensive sales and its marketing and promotion of the brand.

11.    In 2002, long before Defendants' acts described herein, Monster launched its MONSTER ENERGY® drink brand, bearing its now-famous MONSTER ENERGY® and UNLEASH THE BEAST!® marks.  Images of Monster's original MONSTER ENERGY® drink, which Monster has sold continuously since 2002 and which bears the MONSTER ENERGY® mark and UNLEASH THE BEAST!® mark, are shown below.

  

12.    Monster's successful line of MONSTER™ drinks has grown to include numerous other well-known products, the containers and packaging of which are prominently marked with the MONSTER™ mark and most of which

are also prominently marked with the UNLEASH THE BEAST!® mark or other BEAST-inclusive marks.   The MONSTER™ line of drinks includes or has included, but is not limited to, original Monster Energy® and Lo-Carb Monster Energy®; Monster Assault®; Juice Monster® Khaos®, Juice Monster® Ripper®, and Juice Monster® Pipeline Punch®; Ubermonster®; Monster Energy® Gronk; Monster Energy® Import; Punch Monster® Baller's Blend and Punch Monster® Mad Dog; Monster Energy Absolutely Zero®; Monster Energy Zero Ultra®, Monster Energy Ultra Blue®, Monster Energy Ultra Red®, Monster Energy Ultra Sunrise®, Monster Energy Ultra Citron®, and Monster Energy Ultra Black®; Monster Rehab®, which is a line of tea-based non-carbonated energy drinks, which includes Monster's Monster Rehab® Tea + Orangeade + Energy, Monster Rehab® Tea + Pink Lemonade + Energy, Monster Rehab® Tea + Lemonade + Energy, Monster Rehab® Raspberry Tea + Energy, and Monster Rehab® Peach Tea + Energy; Java Monster®, which is a line of dairy based coffee plus energy drinks; Muscle Monster®, which is a line of energy shakes; Monster Energy Extra Strength Nitrous Technology®, which is a line of energy drinks with a blend of nitrous oxide and carbon dioxide to create a smoother energy drink; Monster™ Maxx Maximum Strength; and ⚙® Monster Energy® which is a five ounce concentrated energy drink, among others (referred to collectively as "MONSTER line of drinks").

13.    Monster is also the owner of numerous trademark registrations for marks that incorporate its famous MONSTER™ mark and/or MONSTER ENERGY® mark for beverages, nutritional supplements, and other products and services, including but not limited to the following U.S. Trademark Registrations:

-4-

| MARK | REG. NO. | GOODS | DATE FILED | REG. DATE |
|---|---|---|---|---|
| MONSTER ENERGY | 3,044,315 | Nutritional supplements in liquid form, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 5/23/2003 | 1/17/2006 |
| MONSTER ENERGY | 3,057,061 | Fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, carbonated soft drinks, carbonated drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 4/18/2002 | 2/27/2006 |
| M MONSTER ENERGY | 3,044,314 | Nutritional supplements in liquid form, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 5/23/2003 | 1/17/2006 |
| M MONSTER ENERGY | 3,134,842 | Beverages, namely, carbonated soft drinks, carbonated drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, carbonated energy or sports drinks, fruit juice drinks having a juice content of 50% or less by volume that are shelf | 5/7/2003 | 8/29/2006 |

-5-

| MARK | REG. NO. | GOODS | DATE FILED | REG. DATE |
|------|----------|-------|-----------|-----------|
|      |          | stable, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | | |
| MONSTER ENERGY | 4,036,680 | Nutritional supplements in liquid form | 9/11/2007 | 10/11/2011 |
| MONSTER ENERGY | 4,036,681 | Non-alcoholic beverages, namely, energy drinks, excluding perishable beverage products that contain fruit juice or soy | 9/11/2007 | 10/11/2011 |
|  | 3,134,841 | Beverages, namely, carbonated soft drinks, carbonated soft drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, carbonated energy and sports drinks, fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 5/7/2003 | 8/29/2006 |
|  | 4,865,702 | Nutritional supplements in liquid form; Non-alcoholic beverages, namely, carbonated soft drinks; carbonated drinks enhanced with vitamins, minerals, nutrients, proteins, amino acids | 2/2/2015 | 12/8/2015 |

| MARK | REG. NO. | GOODS | DATE FILED | REG. DATE |
|------|----------|-------|-----------|-----------|
| | | and/or herbs; carbonated energy drinks and sports drinks | | |
| JAVA MONSTER | 3,959,457 | Beverages, namely, soft drinks; non-carbonated energy drinks; non-carbonated sports drinks; soft drinks and non-carbonated energy drinks, all enhanced with vitamins, minerals, nutrients, amino acids, and/or herbs, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 12/8/2005 | 5/10/2011 |
| JUICE MONSTER | 4,716,750 | Nutritional supplements in liquid form; Non-alcoholic beverages, namely, energy drinks and drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, but excluding perishable beverage products that contain fruit juice or soy | 2/24/2012 | 4/7/2015 |
| LO-CARB MONSTER ENERGY | 3,852,118 | Nutritional supplements; non-alcoholic beverages, namely, energy drinks, drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs | 2/13/2009 | 9/28/2010 |
| MONSTER ASSSAULT | 4,634,053 | Nutritional supplements in liquid form; vitamin fortified beverages; Non- | 11/15/2013 | 11/4/2014 |

| MARK | REG. NO. | GOODS | DATE FILED | REG. DATE |
|---|---|---|---|---|
| | | alcoholic beverages, namely, energy drinks, energy drinks flavored with juice, sports drinks, all enhanced with vitamins, minerals, nutrients, proteins, amino acids, and/or herbs, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | | |
| MONSTER ENERGY ABSOLUTELY ZERO | 5,013,706 | Nutritional supplements in liquid form; Non-alcoholic beverages, namely, soft drinks, carbonated soft drinks, energy drinks and sports drinks; energy drinks and sports drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs | 1/20/2015 | 8/2/2016 |
| MONSTER ENERGY EXTRA STRENGTH NITROUS TECHNOLOGY | 4,030,735 | Nutritional supplements in liquid form; Beverages, namely, carbonated soft drinks; carbonated energy drinks; carbonated sports drinks; soft drinks, all enhanced with vitamins, minerals, nutrients, proteins, amino acids, and/or herbs, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 7/16/2010 | 9/27/2011 |

| MARK | REG. NO. | GOODS | DATE FILED | REG. DATE |
|---|---|---|---|---|
| MONSTER ENERGY ULTRA | 5,281,559 | Nutritional supplements in liquid form; Non-alcoholic beverages, namely, carbonated soft drinks, carbonated energy drinks, sports drinks, and soft drinks; energy drinks and sports drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs | 6/12/2014 | 9/5/2017 |
| MONSTER REHAB | 4,111,964 | Ready to drink tea, iced tea and tea based beverages; ready to drink flavored tea, iced tea and tea based beverages | 8/24/2011 | 3/13/2012 |
| MONSTER REHAB | 4,129,288 | Nutritional supplements in liquid form; Beverages, namely, non-alcoholic non-carbonated drinks enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs; non-carbonated energy or sports drinks, fruit juice drinks having a juice content of 50% or less by volume that are shelf-stable; all the foregoing goods exclude perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 7/6/2010 | 4/17/2012 |
| MUSCLE MONSTER | 4,376,796 | Nutritional supplements in liquid form; Beverages, namely, soft drinks; non-alcoholic and non- | 7/2/2010 | 7/30/2013 |

| MARK | REG. NO. | GOODS | DATE FILED | REG. DATE |
|---|---|---|---|---|
|  |  | carbonated drinks enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs; non-carbonated energy or sports drinks; all the foregoing goods exclude perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not |  |  |
| PUNCH MONSTER | 4,604,556 | Nutritional supplements in liquid form; vitamin fortified beverages; Non-alcoholic beverages, namely, energy drinks, energy drinks flavored with juice, fruit-flavored drinks, soft drinks, sports drinks, all enhanced with vitamins, minerals, nutrients, amino acids and/or herbs; all the foregoing goods exclude perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 11/22/2013 | 9/16/2014 |
| UBER-MONSTER | 4,234,456 | Nutritional supplements in liquid form; Beverages, namely, carbonated soft drinks; non-alcoholic carbonated soft drinks and energy drinks enhanced with vitamins, minerals, nutrients, proteins, amino | 7/9/2010 | 10/30/2012 |

| MARK | REG. NO. | GOODS | DATE FILED | REG. DATE |
|------|----------|-------|------------|-----------|
|      |          | acids and/or herbs; carbonated energy drinks and sports drinks, all the foregoing goods exclude perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | | |

14. Attached hereto as Exhibits A1-A20 are true and correct copies of Monster's trademark registrations identified in Paragraph 13 of this Complaint, which are hereby incorporated by reference. Collectively, those registrations and trademarks and the MONSTER™ mark and other MONSTER-containing marks used by Monster, including all common law rights therein, are referred to as the "MONSTER Marks."

15. Additionally, since at least 2002, Monster has been, and still is, engaged in the development, marketing and sale of beverages bearing Monster's UNLEASH THE BEAST!® mark and other BEAST-inclusive marks in connection with its MONSTER™ line of drinks. Monster's UNLEASH THE BEAST!® mark, in addition to appearing on the original MONSTER ENERGY® drink container, has also appeared on the containers of other products in the MONSTER™ line of drinks, including continually appearing on the Lo-Carb MONSTER ENERGY® drink since that product was launched in 2003. The original MONSTER ENERGY® and Lo-Carb MONSTER ENERGY® drinks are the two best-selling drinks in the MONSTER™ line of drinks.

16. Since the launch of the MONSTER™ line of drinks in 2002, and prior to the acts of Defendants complained of herein, Monster has continuously used the UNLEASH THE BEAST!® mark and/or other marks containing the term BEAST, including but not limited to, UNLEASH THE NITRO BEAST!®,

REHAB THE BEAST!®, REHAB THE BEAST! WWW.MONSTERENERGY.COM®, UNLEASH THE ULTRA BEAST!®, and PUMP UP THE BEAST!® (collectively, the "BEAST-Inclusive Marks") on its MONSTER™ line of drinks. Some representative examples of Monster's use of its BEAST-Inclusive Marks on its MONSTER™ line of drinks are shown below:



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28









17.     Monster is the owner of numerous trademark registrations for its
BEAST-Inclusive Marks, including but not limited to the following U.S.
Trademark Registrations:

| MARK | REG. NO. | GOODS | DATE FILED | REG. DATE |
|---|---|---|---|---|
| UNLEASH THE BEAST! | 2,769,364 | Fruit juice drinks, soft drinks, carbonated soft drinks and soft drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs | 12/18/2002 | 9/30/2003 |
| UNLEASH THE NITRO BEAST! | 4,394,044 | Non-alcoholic beverages, namely, carbonated soft drinks; carbonated drinks enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs; carbonated energy or sports drinks | 12/14/2010 | 8/27/2013 |

| MARK | REG. NO. | GOODS | DATE FILED | REG. DATE |
|---|---|---|---|---|
| REHAB THE BEAST! | 4,336,329 | Ready to drink tea, iced tea and tea based beverages; ready to drink flavored tea, iced tea and tea based beverages; Non-alcoholic beverages, namely, energy drinks, sports drinks and fruit juice drinks; all the foregoing enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs | 11/3/2010 | 5/14/2013 |
| REHAB THE BEAST! WWW.MON STERENER GY.COM | 4,292,502 | Ready to drink tea, iced tea and tea based beverages; ready to drink flavored tea, iced tea and tea based beverages; Non-alcoholic beverages, namely, energy drinks, sports drinks and fruit juice drinks, all the foregoing enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs | 2/15/2012 | 2/19/2013 |
| UNLEASH THE ULTRA BEAST! | 4,371,544 | Non-alcoholic beverages, namely, carbonated soft drinks; carbonated drinks enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs; carbonated energy drinks and sports drinks | 11/19/2012 | 7/23/2013 |
| PUMP UP THE BEAST! | 4,482,659 | Nutritional supplements in liquid form; vitamin fortified beverages | 5/15/2013 | 2/11/2014 |

-15-

| MARK | REG. NO. | GOODS | DATE FILED | REG. DATE |
|------|----------|-------|------------|-----------|
| PUMP UP THE BEAST! | 4,482,660 | Dairy-based beverages; dairy-based energy shakes | 5/15/2013 | 2/11/2014 |
| PUMP UP THE BEAST! | 4,542,107 | Ready to drink coffee-based beverages; coffee-based shakes for boosting energy; chocolate-based shakes for boosting energy; ready to drink chocolate-based beverages | 5/15/2013 | 6/3/2014 |
| PUMP UP THE BEAST! | 4,546,402 | Non-alcoholic beverages, namely, non-alcoholic and non-carbonated drinks enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs; non-carbonated energy or sports drinks | 5/15/2013 | 6/10/2014 |

18.   Attached hereto as Exhibits B1-B9 are true and correct copies of Monster's trademark registrations identified in Paragraph 17 of this Complaint, which are incorporated herein by reference.

19.   Monster has and continues to widely market and promote its MONSTER Marks and BEAST-Inclusive Marks by displaying the marks on billions of cans of its MONSTER™ line of drinks sold in the U.S.; on promotional and point of sale materials; on product samplings; apparel and merchandise; in magazines and other industry publications; on the MONSTER ENERGY® website, the Monster Army website, and other Internet websites; on Monster's social media sites; at trade shows, concert tours and live events; and through sponsorship of athletes.

20.   The MONSTER™ line of drinks, which display the MONSTER Marks and most of which also display the BEAST-Inclusive marks, has

achieved substantial commercial success.  Worldwide retail sales now exceed 3 billion cans per year, with estimated retail sales at approximately $6 billion per year worldwide.  The MONSTER$^{TM}$ brand has established itself as the best-selling energy drink brand in the U.S. by unit volume and dollar value.

21.     Monster also invests substantial sums in marketing its brand.  Since 2002, Monster has spent approximately $4.6 billion in marketing and promoting its MONSTER$^{TM}$ brand, including its MONSTER Marks and BEAST-Inclusive Marks.  In 2017 alone, Monster spent $537 million in marketing and promoting its MONSTER$^{TM}$ brand, including its MONSTER Marks and BEAST-Inclusive Marks.

22.     Monster has distributed millions of point-of-sale marketing items bearing its MONSTER Marks and/or BEAST-Inclusive Marks.  These point-of-sale marketing items include, but are not limited to, case stackers, stickers, displays for shelves, suction cup racks and coolers.  Below are true and accurate representative pictures illustrating examples of Monster's point-of-sale materials.

 






23.     Monster also widely markets and promotes its MONSTER Marks and BEAST-Inclusive Marks to consumers through clothing sales and giveaways.  Since 2002, Monster has licensed, sold, and/or given away clothing bearing its MONSTER ENERGY® mark and UNLEASH THE BEAST!® mark, among other marks.

24.     Monster's MONSTER ENERGY® mark and the UNLEASH THE BEAST!® mark have also received significant exposure in national publications. For example, the marks have been featured in *Fortune*, *Newsweek*, *Beverage World*, *Beverage Spectrum*, *Forbes*, and/or *Business Week*, among other

publindexations.

25.     Monster's MONSTER Marks and BEAST-Inclusive Marks also receive extensive publicity and exposure through Monster's websites, including its www.monsterenergy.com website and social media sites including Monster's Facebook, Twitter, Instagram, and YouTube accounts.   As of June 2015, Monster's www.monsterenergy.com website was receiving over 50,000 visitors per day.   Monster's Facebook page has over 26.3 million "likes."   Monster's Instagram page has over 4.5 million followers.   Monster's YouTube page has over 250 million views.   The MONSTER Marks and BEAST-Inclusive Marks are displayed on these websites and/or social media sites.

26.     Monster also has and continues to widely market and promote its MONSTER Marks and BEAST-Inclusive Marks through the sponsorship of athletes, athletic teams, and athletic competitions, as well as concerts and live events around the world.   The MONSTER Marks and/or BEAST-Inclusive Marks are also prominently displayed at live events sponsored by Monster, including through the use of promotional items.   Monster also frequently gives away products bearing its MONSTER Marks and/or BEAST-Inclusive Marks to attendees at these events.

27.     In 2018 Monster became the title sponsor of the Professional Bull Riders ("PBR") tour for PBR's 25th Anniversary Season, which is titled the "Unleash the Beast Tour" as shown, for example, below:

1
2
3
4
5
6
7
8
9
10
11
12



13   The PBR is experiencing unprecedented growth in global appeal.  More than

14   600 bull riders from around the globe compete in more than 300 bull riding

15   events each year on either the nationally televised Built Ford Tough Series, the

16   Blue DEF Velocity Tour or the Touring Pro Division.

17        28.    The MONSTER ENERGY® mark and UNLEASH THE BEAST!®

18   mark were also marketed and promoted while prominently displayed on the Las

19   Vegas monorail (the "Monster Train").  In 2003, Monster engaged in a massive

20   advertising campaign in connection with its sponsorship of the Monster Train,

21   which prominently featured the MONSTER ENERGY® mark and the

22   UNLEASH THE BEAST!® mark.  The Monster Train was featured in *The Wall*

23   *Street Journal*, *Time*, and *USA Today* in 2003, and these articles were read by an

24   estimated 32 million people in the U.S.  Television and internet reports that

25   discussed the Las Vegas Monster Train reached another 70 million readers, and

26   television and radio promotions were circulated to approximately 36 million

27   people in the U.S.

28

29.     As a result of Monster's substantial use and promotion of its MONSTER Marks and BEAST-Inclusive Marks, Monster has obtained strong common law rights in the marks.  The marks have acquired great value as specific identifiers of Monster's products and services and serve to identify and distinguish the products and services from those of others.  Customers in this Judicial District and elsewhere readily recognize the MONSTER Marks and BEAST-Inclusive Marks as distinctive designations of the origin of Monster's products and services.  The marks are intellectual property assets of enormous value as symbols of Monster and its quality products, services, reputation and goodwill.

**B.     Defendants' Infringing Activities**

30.     Upon information and belief, Defendant Thunder Beast is engaged in the business of producing, selling, and distributing beverages, including root beer.

31.     Upon information and belief, Defendant Stephen Norberg is Thunder Beast's sole owner and sole officer.  Upon information and belief, Mr. Norberg directs and controls all aspects of Thunder Beast's business, including manufacturing, labeling, marketing, distributing, and selling Thunder Beast's goods, as well as making all day-to-day business decisions and overall business decisions for Thunder Beast, including the acts of infringement, false designation of origin, and unfair competition complained of herein.

32.     Upon information and belief, Defendants own and operate the website, www.drinkthunderbeast.com, and maintain the Facebook account, www.facebook.com/drinkthunderbeast.  A WHOIS lookup of Thunder Beast's website, www.drinkthunderbeast.com, shows that the registrant is Stephen Norberg.   A true and correct printout of the WHOIS lookup for drinkthunderbeast.com is attached hereto as Exhibit C, which is hereby incorporated by reference.

33.    Defendants' website, which sells Defendants' goods, states that the goods are "[s]hipped anywhere in the lower 48 of America."

34.    Defendants have sold their beverage products, including the product shown in Paragraph 38 of this Complaint, to customers in California, including to customers in this Judicial District.

35.    Defendant Thunder Beast is the owner of U.S. Trademark Registration No. 4,772,758 for the mark THUNDER BEAST in International Class 32 for "non-alcoholic beverages, namely, carbonated beverages."  A true and correct copy of U.S. Trademark Registration No. 4,772,758 is attached hereto as Exhibit D, which is hereby incorporated by reference.

36.    Defendants have marketed, sold and are offering for sale beverages in connection with the THUNDER BEAST mark.

37.    On January 22, 2016, Monster filed a Petition for Cancellation with the United States Patent and Trademark Office ("USPTO") (Cancellation No. 92063037) seeking to cancel Thunder Beast's U.S. Trademark Registration No. 4,772,758 for the THUNDER BEAST mark based on a likelihood of confusion with Monster's BEAST-Inclusive Marks.  Proceedings in Cancellation No. 92063037 (the "USPTO Cancellation") are ongoing.

38.    Upon information and belief, Defendants were aware of Monster and Monster's rights in its MONSTER Marks and BEAST-Inclusive Marks at least as early as January 2016 when the USPTO Cancellation was initiated.

39.    After the USPTO Cancellation proceedings began, and without permission or consent from Monster, Defendants added DRINK THUNDER. FIGHT MONSTERS!, to the THUNDER BEAST beverages and advertisements.  Examples of Defendants' promotional materials and goods are shown below:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





40.    Defendants had actual notice of Monster and Monster's rights in the MONSTER Marks and the BEAST-Inclusive Marks when Defendants added the term MONSTERS directly above BEAST to the label of its beverages.   At that time, Defendants also knew that Monster used its MONSTER Marks and BEAST-Inclusive Marks together on Monster's beverages.   Defendants thereafter adopted a new label design in which "MONSTERS" appears directly above "BEAST," as shown above.

41.    Defendants have also used, without permission or consent from Monster, Monster's marks, including Monster's MONSTER ENERGY® mark in the green and black colors as widely used by Monster, on their website, their social media sites, and on point-of-sale materials.   For example, Defendants are using Monster's MONSTER ENERGY® mark to attract customers to Defendants' booths at markets where Defendants offer their beverages for sale.

42.    Defendants are not affiliated with Monster.   At no time has Monster ever given Defendants license, permission, or authority to use or display any of Monster's marks, including the MONSTER Marks or BEAST-Inclusive Marks.

43.    Defendants have intentionally attempted to capitalize on Monster's valuable reputation and customer goodwill in the MONSTER Marks and the BEAST-Inclusive Marks by using marks that are confusingly similar to Monster's MONSTER Marks and BEAST-Inclusive Marks on and in connection with Defendants' products, including on the product labels, on Defendants' website and social media sites, and in other marketing and promotional materials.

44.    Upon information and belief, Defendants' actions alleged herein are intended to cause confusion, mistake, or deception as to the source of Defendants' products and are intended to cause consumers and potential customers to believe that Defendants' products are associated with Monster or

the MONSTER™ line of drinks, when they are not.

45.     Defendants have a duty to avoid confusion with Monster and its marks because Defendants entered the market after Monster.   Nevertheless, Defendants have purposely promoted, marketed, and/or sold their goods in a manner that is likely to cause confusion with Monster and its products.

46.     By virtue of the acts complained of herein, Defendants have created a likelihood of injury to Monster's business reputation and goodwill, caused a likelihood of consumer confusion, mistake, and deception as to the source of origin or relationship of Monster's goods and Defendants' goods, and have otherwise competed unfairly with Monster by unlawfully trading on and using Monster's marks without Monster's permission or consent.

47.     Upon information and belief, Defendants' acts complained of herein have been willful and deliberate.

48.     Defendants' acts complained of herein have caused damage to Monster in an amount to be determined at trial, and such damages will continue to increase unless Defendants are enjoined from their wrongful acts and infringement.

49.     Defendants' acts complained of herein have caused Monster to suffer irreparable injury to its business.  Monster will suffer substantial loss of goodwill and reputation unless and until Defendants are preliminarily and permanently enjoined from the wrongful acts complained of herein.

## IV.  <u>FIRST CLAIM FOR RELIEF</u>

**(Trademark Infringement and False Designation of Origin Under 15 U.S.C. § 1125(a))**

50.      Monster hereby repeats, realleges, and incorporates by reference Paragraphs 1-49 of this Complaint as if set forth fully herein.

51.     This is an action for trademark infringement and false designation of origin arising under 15 U.S.C. § 1125(a).

52.     As a result of the widespread use and promotion of Monster's MONSTER Marks and BEAST-Inclusive Marks, the marks have acquired strong fame and secondary meaning to consumers and potential customers, in that consumers and potential customers have come to associate the marks with Monster.

53.     Defendants have infringed the MONSTER Marks and BEAST-Inclusive Marks, and created a false designation of origin, by using in commerce, without Monster's permission, those marks or confusingly similar marks in connection with the advertisement, promotion, offering for sale, and/or sale of Defendants' goods.

54.     Defendants' actions are likely to cause confusion and mistake, or to deceive as to the affiliation, connection, or association of Monster with Defendants, and/or as to the origin, sponsorship, or approval of Defendants' products or Defendants' commercial activities, in violation of 15 U.S.C. § 1125(a).

55.     Upon information and belief, Defendants acted with the intent to trade upon Monster's reputation and goodwill by causing confusion and mistake among customers and the public and to deceive the public into believing that Defendants' products are associated with, sponsored by or approved by Monster, when they are not.

56.     Upon information and belief, Defendants had actual knowledge of Monster's ownership and prior use of the MONSTER Marks and BEAST-Inclusive Marks, and without the consent of Monster, willfully violated 15 U.S.C. § 1125(a).

57.     Defendants, by their actions, have damaged Monster in an amount to be determined at trial.

58.     Defendants, by their actions, have irreparably injured Monster. Such irreparable injury will continue unless Defendants are preliminarily and

permanently enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

## V.  SECOND CLAIM FOR RELIEF

### (Trademark Infringement Under 15 U.S.C. § 1114)

59.     Monster hereby repeats, realleges, and incorporates by reference Paragraphs 1-58 of this Complaint as if set forth fully herein.

60.     This is a claim for trademark infringement arising under 15 U.S.C. § 1114.

61.     Monster owns valid and enforceable federally registered trademarks for the MONSTER Marks and BEAST-Inclusive Marks, including at least the registrations listed in Paragraphs 13 and 17 of this Complaint.

62.     Defendants have used in commerce, without permission from Monster, colorable imitations and/or confusingly similar marks to Monster's MONSTER Marks and BEAST-Inclusive Marks that are the subject of at least Monster's U.S. Trademark Registrations listed in Paragraphs 13 and 17 of this Complaint in connection with the advertising, marketing, and/or promotion of Defendants' goods.  Such use is likely to cause confusion or mistake, or to deceive.

63.     Upon information and belief, Defendants' activities complained of herein constitute willful and intentional infringements of Monster's registered marks, and Defendants acted with the intent to trade upon Monster's reputation and goodwill by causing confusion and mistake among customers and the public and to deceive the public into believing that Defendants' goods are associated with, sponsored by, originated from, or are approved by Monster, when they are not.

64.     Upon information and belief, Defendants had actual knowledge of Monster's ownership and prior use of the MONSTER Marks and BEAST-Inclusive Marks and without the consent of Monster, willfully violated 15

U.S.C. § 1114.

65.     Defendants, by their actions, have damaged Monster in an amount to be determined at trial.

66.     Defendants, by their actions, have irreparably injured Monster. Such irreparable injury will continue unless Defendants are preliminarily and permanently enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

## VI.  <u>THIRD CLAIM FOR RELIEF</u>

### (Unfair Competition Under California Business & Professions Code §§ 17200 *et seq.*)

67.     Monster hereby repeats, realleges, and incorporates by reference Paragraphs 1-66 of this Complaint as if set forth fully herein.

68.     This is an action for unfair competition under California Business & Professions Code §§ 17200, *et seq.*

69.     By virtue of the acts complained of herein, Defendants have intentionally caused a likelihood of confusion among consumers and the public and have unfairly competed in violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.*

70.     Defendants' acts complained of herein constitute trademark infringement and unfair competition which have injured and damaged Monster.

71.     Defendants, by their actions, have irreparably injured Monster. Such irreparable injury will continue unless Defendants are preliminarily and permanently enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

## VII.  <u>FOURTH CLAIM FOR RELIEF</u>

### (California Common Law Unfair Competition)

72.     Monster hereby repeats, realleges, and incorporates by reference Paragraphs 1-71 of this Complaint as if set forth fully herein.

73.    This is an action for unfair competition under the common law of the State of California.

74.    Defendants' acts complained of herein constitute trademark infringement and unfair competition under the common law of the State of California.

75.    By virtue of the acts complained of herein, Defendants have willfully and intentionally caused a likelihood of confusion among the purchasing public in this Judicial District and elsewhere, thereby unfairly competing with Monster in violation of the common law of the State of California.

76.    Defendants' aforementioned acts have damaged Monster in an amount to be determined at trial.

77.    Defendants have irreparably injured Monster.   Such irreparable injury will continue unless Defendants are preliminarily and permanently enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

78.    Defendants' willful acts of unfair competition under California common law constitute fraud, oppression and malice.   Accordingly, Monster is entitled to exemplary damages pursuant to Cal. Civ. Code § 3294(a).

## VIII.   <u>FIFTH CLAIM FOR RELIEF</u>

**(Petition for Cancellation of U.S. Trademark Registration No. 4,772,758 Under 15 U.S.C. § 1119)**

79.    Monster hereby repeats, realleges, and incorporates by reference Paragraphs 1-78 of this Complaint as if set forth fully herein.

80.    This is a claim for cancellation of Defendant Thunder Beast's U.S. Trademark Registration No. 4,772,758 (the "Contested Registration") under 15 U.S.C. § 1119.

/ / /

-29-

81.     Prior to the first use, filing, and registration dates of the Contested Registration, Monster has continuously used its BEAST-Inclusive Marks in connection with its products and services, including beverages.  By virtue of Monster's continuous and substantial use of its BEAST-Inclusive Marks, the marks have become strong identifiers of Monster and its products and services, and distinguish Monster's products and services from those of others.  Monster has built up significant and valuable goodwill and customer recognition in its BEAST-Inclusive Marks.  Monster relies on U.S. Trademark registrations for its BEAST Marks identified in Paragraph 17 of this Complaint.

82.     Monster is being damaged by continued registration of the Contested Registration in that the mark shown in the registration is confusingly similar to Monster's BEAST-Inclusive Marks.  Potential purchasers, upon seeing the mark shown in the Contested Registration, are likely to mistakenly believe that such mark and goods identified in the registration originate with or are connected or associated with, or sponsored, licensed, or approved by Monster.

83.     In view of Monster's prior rights in the BEAST-Inclusive Marks, Defendant Thunder Beast is not entitled to federal registration of the mark shown in the Contested Registration and this registration should be cancelled pursuant to 15 U.S.C. § 1119.

## IX.  **PRAYER FOR RELIEF**

WHEREFORE, Monster prays for judgment against Defendants as follows:

1.     That the Court render a final judgment in favor of Monster and against Defendants on all claims for relief alleged herein;

2.     That the Court render a final judgment that Defendants have violated the provisions of 15 U.S.C. § 1125(a) by infringing the MONSTER

Marks and the BEAST-Inclusive Marks and falsely designating the origin of their goods through the marketing, sale, and promotion of Defendants' goods;

3.    That the Court render a final judgment that Defendants have willfully violated the provisions of 15 U.S.C. § 1114 by infringing Monster's trademark rights in at least the marks that are the subject of the U.S. Trademark Registrations listed in Paragraphs 13 and 17 of this Complaint;

4.    That the Court render a final judgment declaring that Defendants have violated and willfully violated the provisions of California Business & Professions Code §§ 17200, *et seq.* by committing trademark infringement and unfairly competing with Monster;

5.    That the Court render a final judgment declaring that Defendants have violated California common law by unfairly competing with Monster;

6.    That the Court direct the United States Patent and Trademark Office to cancel U.S. Trademark Registration No. 4,772,758;

7.    That Defendants, their agents, servants, employees, attorneys, successors, and assigns, and all other persons in active concert or participation with Defendants who receive actual notice of the injunction by personal service or otherwise, be forthwith preliminarily and permanently enjoined from:

   a.    using the terms BEAST or MONSTERS in connection with the advertising, promotion, or sale of Defendants' goods or using any of the MONSTER Marks and/or BEAST-Inclusive Marks, or any confusingly similar variations thereof, in connection with the advertising, promotion or sale of Defendants' goods in any manner that is likely to create the impression that Defendants' goods originate from Monster, are endorsed by Monster, or are connected in any way with Monster;

   b.    manufacturing, distributing, shipping, importing, reproducing, displaying, advertising, marketing, promoting, transferring, selling,

-31-

and/or offering to sell any unauthorized products bearing any of the MONSTER Marks or BEAST-Inclusive Marks, and/or any confusingly similar marks;

c.   filing any applications for registration of any trademarks confusingly similar to the MONSTER Marks or BEAST-Inclusive Marks;

d.   otherwise infringing any of the MONSTER Marks, BEAST-Inclusive Marks, or any of Monster's other trademarks;

e.   falsely designating the origin of Defendants' products;

f.   unfairly competing with Monster in any manner whatsoever; and

g.   causing a likelihood of confusion or injury to Monster's business reputation;

8.   That Defendants be directed to file with this Court and serve on Monster within thirty (30) days after the service of the injunction, a report, in writing, under oath, setting forth in detail the manner and form in which they have complied with the injunction pursuant to 15 U.S.C. § 1116;

9.   That Defendants be required to account to Monster for any and all profits derived by Defendants and all damages sustained by Monster by virtue of Defendants' acts complained of herein;

10.   That Defendants be ordered to pay over to Monster all damages which Monster has sustained as a consequence of the acts complained of herein, subject to proof at trial, together with prejudgment and post-judgment interest;

11.   That this case be deemed exceptional and the amount of the damages be trebled and that the amount of profits be increased as the Court deems appropriate, pursuant to 15 U.S.C. § 1117;

12.   That Monster be awarded exemplary damages from Defendants pursuant to Cal. Civ. Code. § 3294;

13.   That Defendants' actions be deemed willful;

-32-

14.   That an award of reasonable costs, expenses, and attorneys' fees be awarded to Monster pursuant to at least 15 U.S.C. § 1117;

15.   That Defendants be required to deliver and destroy all advertising, goods, and other unauthorized materials bearing the terms BEAST and/or MONSTERS, any of the MONSTER Marks, any of the BEAST-Inclusive Marks, or any confusingly similar marks, pursuant to 15 U.S.C. § 1118; and

16.   That Monster be awarded such other and further relief as this Court may deem just.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated:  June 26, 2018          By: */s/ Matthew S. Bellinger*
                                      Steven J. Nataupsky
                                      Lynda J. Zadra-Symes
                                      Matthew S. Bellinger
                                      Daniel C. Kiang

                                      Attorneys for Plaintiff,
                                      MONSTER ENERGY COMPANY

# X.  DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Monster Energy Company hereby demands a trial by jury on all issues so triable.

Respectfully submitted,
KNOBBE, MARTENS, OLSON & BEAR, LLP


Dated:  June 26, 2018          By: */s/  Matthew S. Bellinger*
                                   Steven J. Nataupsky
                                   Lynda J. Zadra-Symes
                                   Matthew S. Bellinger
                                   Daniel C. Kiang

                               Attorneys for Plaintiff,
                               MONSTER ENERGY COMPANY