Steven J. Nataupsky (SBN 155913)
steven.nataupsky@knobbe.com
Lynda J. Zadra-Symes (SBN 156511)
lynda.zadrasymes@knobbe.com
Matthew S. Bellinger (SBN 222228)
matt.bellinger@knobbe.com
Daniel C. Kiang (SBN 307961)
daniel.kiang@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

Attorneys for Plaintiff
MONSTER ENERGY COMPANY

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONSTER ENERGY COMPANY, a Delaware corporation,<br><br>                    Plaintiff,<br><br>          v.<br><br>THUNDER BEAST LLC, a District of Columbia limited liability company, and<br><br>STEPHEN NORBERG, an individual,<br><br>                    Defendants. | Case No. 5:18-cv-01367-AB-AS<br><br>**PLAINTIFF MONSTER ENERGY COMPANY'S MEMORANDUM IN SUPPORT OF ANTI-SLAPP MOTION TO STRIKE DEFENDANTS' COUNTERCLAIM PURSUANT TO CAL. CIV. PROC. CODE § 425.16, MOTION TO STRIKE DEFENDANTS' AFFIRMATIVE DEFENSES, AND MOTION FOR ATTORNEYS' FEES**<br><br>Date:          October 19, 2018<br>Time:          10:00 a.m.<br>Ctrm:          7B<br><br>Hon. André Birotte Jr. |

# TABLE OF CONTENTS

**Page No.**

I.    INTRODUCTION ........................................................................... 1

II.   BACKGROUND ............................................................................. 2

    A.    Monster and Its Famous Trademarks ................................ 2

    B.    Monster's Claims Against Thunder Beast and Stephen Norberg in the USPTO and in This Court ........................ 4

    C.    Defendants' Answer and Counterclaims ......................... 5

III.  LEGAL STANDARDS ................................................................... 6

    A.    Anti-SLAPP Special Motion to Strike ............................. 6

    B.    Motions to Strike Under Federal Rule of Civil Procedure 12(f) ................................................................... 7

IV.  THE UNFAIR COMPETITION COUNTERCLAIM SHOULD BE DISMISSED UNDER CALIFORNIA'S ANTI-SLAPP STATUTE ....................................................................................... 7

    A.    Defendants' Unfair Competition Counterclaim Is Based on Monster's Filing of Its Complaint in this Action – A Protected Act ...................................................... 8

    B.    Defendants Cannot Show a Reasonable Probability of Success on Their Counterclaim Because the Counterclaim Is Barred by the Litigation Privilege ......................... 8

    C.    To the Extent that Defendants Argue that the Counterclaim Is Also Based on the USPTO Cancellation Proceedings, Such Conduct Is Also Protected by the Anti-SLAPP Statute ...................................................... 10

    D.    Defendants Lack Standing to Bring an Unfair Competition Counterclaim ............................................ 12

    E.    Monster Is Entitled to Attorneys' Fees Incurred in Bringing this Anti-SLAPP Motion ................................. 13

V.   DEFENDANTS' UNCLEAN HANDS AND TRADEMARK MISUSE DEFENSES SHOULD BE STRICKEN ..................................... 13

-i-

# TABLE OF CONTENTS
## (*cont'd*)

Page No.

A.  The Unclean Hands Affirmative Defense Fails to Plead a Necessary Element and Is Based on Activity Protected by the *Noerr-Pennington* Doctrine ....................................................... 13

    1.  Defendants Have Not Pled and Cannot Plead a Specific Intent to Deceive Customers ................................. 13

    2.  The Unclean Hands Affirmative Defense Is Based on Activity Protected by the *Noerr-Pennington* Doctrine ............................................................................... 14

B.  Defendants' Trademark Misuse Defense Is Also Barred by the *Noerr-Pennington* Doctrine and Is Duplicative of the Unclean Hands Defense ............................................... 17

C.  The Court Should Not Grant Leave to Amend Because the Affirmative Defenses Are Insufficient as a Matter of Law ....................................................................................... 18

VI.  CONCLUSION ......................................................................... 19

# TABLE OF AUTHORITIES

**Page No(s).**

*Action Apartment Ass'n v. City of Santa Monica,*
  41 Cal. 4th 1232 (2007)....................................................................... 8

*Adidas Am., Inc. v. TRB Acquisitions LLC,*
  No. 3:15-cv-2113-SI, 2017 WL 337983 (D. Or. Jan. 23, 2017) ............ 15, 17

*Arista Records v. Sanchez,*
  No. CV 05-07046 FMC (PJWx), 2006 WL 5908359
  (C.D. Cal. Mar. 1, 2006)..................................................................... 10

*Babb v. Superior Court,*
  3 Cal. 3d 841 (1971) ........................................................................... 9

*Cal. Brewing Co. v. 3 Daughters Brewing LLC,*
  No. 2:15-cv-02278-KJM-CMK, 2016 WL 4001133
  (E.D. Cal. July 25, 2016).................................................................... 7

*ComputerXpress, Inc. v. Jackson,*
  93 Cal. App. 4th 993 (2001)............................................................... 11

*Cordon v. Wachovia Mortg.,*
  776 F. Supp. 2d 1029 (N.D. Cal. 2011) .............................................. 12

*Ganley v. Cty. Of San Mateo,*
  2007 WL 902551 (N.D. Cal. Mar. 22, 2007)........................................ 7

*Gateway, Inc. v. Companion Prods., Inc.,*
  320 F. Supp. 2d 912 (D.S.D. 2002) .................................................... 17

*Gibson Brands v. John Hornby Skewes & Co.,*
  No. CV 14-00609-DPP, 2014 WL 4187979
  (C.D. Cal. Aug. 22, 2014) .................................................................. 18

*Graham-Sult v. Clainos,*
  756 F.3d 724 (9th Cir. 2013)........................................................ 6, 8, 9, 10

*James Glidewell Dental Ceramics v. Keating Dental Arts,*
  No. SACV11-01309-DOC, 2013 WL 655314
  (C.D. Cal. Feb. 21, 2013) ......................................................... 8, 9, 14, 16

*Kashian v. Harriman,*
  98 Cal. App. 4th 892 (2002)........................................................... 6, 9

*Ketchum v. Moses,*
  24 Cal. 4th 1122 (2001).................................................................... 13

# TABLE OF AUTHORITIES
## (*cont'd*)

**Page No(s).**

*Kwikset Corp. v. Superior Court*,
  51 Cal. 4th 310 (2011)..................................................................... 12

*Lockwood v. Sheppard, Mullin, Richter & Hampton, LLP*,
  No. CV 09-5157-JFW, 2009 WL 9419499
  (C.D. Cal. Nov. 24, 2009) ............................................................... 11

*Mantistee Town Ctr. v. City of Glendale*,
  227 F.3d 1090 (9th Cir. 2000) ........................................................ 14

*Mindys Cosmetics, Inc. v. Dakar*,
  611 F.3d 590 (9th Cir. 2010)....................................................... 8, 11

*Monster Energy Co. v. Integrated Supply Network LLC*,
  No. ED CV 17-548-CBM-RAO, 2018 WL 3357532
  (C.D. Cal. June 4, 2018) ........................................................ *passim*

*Moss v. U.S. Secret Service*,
  572 F.3d 962 (9th Cir. 2009)........................................................... 16

*New.Net, Inc. v. Lavasoft*,
  356 F. Supp. 2d 1090 (C.D. Cal. 2004)........................................... 13

*United States ex rel. Newsham v. Lockheed Missles & Space Co.*,
  190 F.3d 963 (9th Cir. 1999) ................................................. 1, 6, 13

*Nunez v. Pennisi*,
  241 Cal. App. 4th 861 (2015)............................................................ 9

*Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*,
  508 U.S. 49 (1993) .......................................................................... 15

*RDF Media Ltd. v. Fox Broadcasting Co.*,
  372 F. Supp. 2d 556 (C.D. Cal. 2005).............................................. 18

*Reichman v. Poshmark, Inc.*,
  267 F. Supp. 3d 1278 (S.D. Cal. 2017) ........................................... 12

*Rubin v. Green*,
  4 Cal. 4th 1187 (1993)....................................................................... 9

*Sidney-Vinstein v. A.H. Robins Co.*,
  697 F.2d 880 (9th Cir. 1983) ............................................................. 7

*Sosa v. DIRECTV, Inc.*,
  437 F.3d 923 (9th Cir. 2006) ........................................................... 15

# TABLE OF AUTHORITIES
### (*cont'd*)

**Page No(s).**

*Thomas v. Fry's Elecs., Inc.*,
    400 F.3d 1206 (9th Cir. 2005) (per curiam) ..................................................... 6

*TSX Toys v. 665, Inc.*,
    No. EDCV 14-02400-RGK, 2015 WL 12746211
    (C.D. Cal. Sept. 23, 2015) ............................................................................. 18

*White v. Lee*,
    227 F.3d 1214 (9th Cir. 2000) ....................................................................... 16

# OTHER AUTHORITIES

Cal. Bus. & Prof. Code § 17200 ................................................................. 5, 7, 19

Cal. Bus. & Prof. Code § 17204 ..................................................................... 12

Cal. Civ. Code § 47 ........................................................................... 2, 6, 7, 9

Cal. Civ. Proc. Code § 425.16 .......................................................... 1, 6, 11, 13

Fed. R. Civ. P. 12(f) ............................................................................. 1, 2, 7

Plaintiff Monster Energy Company ("Monster") hereby submits this Memorandum of Points and Authorities in support of its Anti-SLAPP Motion to Strike Thunder Beast LLC's and Stephen Norberg's (collectively, "Defendants") Counterclaim of Unfair Competition, its Motion to Strike Defendants' Fourth and Fifth Affirmative Defenses set forth in Defendants' Answer and Counterclaims (Dkt. No. 21), and its Motion for Attorneys' Fees incurred as a result of the Anti-SLAPP motion.  This Anti-SLAPP special motion to strike is made pursuant to Section 425.16(b) of the California Code of Civil Procedure, which is applicable to state law claims filed in federal court under *United States ex rel. Newsham v. Lockheed Missles & Space Co.*, 190 F.3d 963, 970-73 (9th Cir. 1999).  This motion is also made pursuant to Rule 12(f) of the Federal Rules of Civil Procedure with respect to Defendants' fourth and fifth affirmative defenses.  Pursuant to Section 425.16(c) of the California Code of Civil Procedure, Monster also seeks its attorneys' fees and costs in connection with the Anti-SLAPP portion of this motion.

## I.  **INTRODUCTION**

The First Amendment to the United States Constitution guarantees the right "to petition the Government for a redress of grievances."  U.S. Const. amend. I.  As a market leader in energy drinks and the owner of an internationally famous brand, Monster has had to petition the courts and the United States Patent and Trademark Office ("USPTO") on numerous occasions to enforce and protect its substantial investment in its intellectual property, which is often imitated, and to prevent others from trading off its goodwill.

Defendants' state law counterclaim for unfair competition and their affirmative defenses of unclean hands and trademark misuse seek to punish Monster for initiating a trademark cancellation proceeding before the USPTO and initiating the present infringement lawsuit before this Court.  Allowing such claims and defenses to move forward would only serve to chill Monster's

protected activity of petitioning the Government for redress against those seeking to trade upon Monster's goodwill and reputation.

The California State Legislature and the federal judiciary have adopted special protections for these First Amendment activities.  As codified in Section 47(b) of the California Civil Code, the litigation privilege bars virtually all liability for communications made by litigants in judicial or quasi-judicial proceedings to achieve the objects of the litigation and that have some connection to the litigation.  Federal courts have also long recognized the *Noerr-Pennington* doctrine, which immunizes litigants against causes of action and defenses that implicate the right to petition the government for redress.

Because Defendants' counterclaim and affirmative defenses are predicated solely on Monster's protected petitioning activities in the USPTO and this Court, they are barred entirely by the litigation privilege and the *Noerr-Pennington* doctrine.   Thus, the Court should strike Defendants' unfair competition counterclaim pursuant to California's Anti-SLAPP statute and strike Defendants' affirmative defenses of trademark misuse and unclean hands pursuant to Federal Rule of Civil Procedure 12(f).  Pursuant to California's Anti-SLAPP statute, this Court should also grant Monster its attorneys' fees in bringing its Anti-SLAPP motion.

## II.   BACKGROUND

### A.   Monster and Its Famous Trademarks

Monster is a nationwide leader in the business of developing, marketing, selling, and distributing beverages including its MONSTER ENERGY® line of energy drinks.  Dkt. No. 1 ¶ 10.  Through extensive sales, marketing, and promotions, Monster has achieved extensive exposure and widespread recognition of its MONSTER™ brand in the U.S. and internationally.  *Id.* Monster launched its MONSTER ENERGY® drink in 2002, bearing its now famous MONSTER ENERGY® and UNLEASH THE BEAST!® marks.  *Id.*

¶ 11.  Since 2002, almost every can of Monster's MONSTER ENERGY® drinks has borne both the MONSTER ENERGY® and UNLEASH THE BEAST!® marks.  *Id.*

  

*Id.*

Monster has expanded its line of MONSTER™ drinks to include numerous other well-known products, the containers and packaging of which are predominantly marked with the MONSTER™ mark and most of which are also marked with the UNLEASH THE BEAST!® mark or other BEAST-inclusive marks.  *Id.* ¶ 12.  Monster has sought and obtained numerous federal trademark registrations for its marks containing MONSTER or MONSTER ENERGY (collectively, "MONSTER Marks") and for its marks containing BEAST, including but not limited to UNLEASH THE BEAST!®, UNLEASH THE NITRO BEAST!®, REHAB THE BEAST!®, REHAB THE BEAST! WWW.MONSTERENERGY.COM®, and UNLEASH THE ULTRA BEAST!® (collectively, BEAST-Inclusive Marks).  *Id.* ¶¶ 13-17.

The MONSTER™ line of drinks, which display the MONSTER Marks and most of which also display the BEAST-Inclusive Marks, has achieved substantial commercial success, including worldwide retail sales exceeding

three billion cans per year and estimated retail sales of approximately $6 billion per year worldwide. *Id.* ¶ 20. In the United States, the MONSTER™ brand has established itself as the best-selling energy drink brand by unit volume and dollar value. *Id.* Over the years, Monster has invested approximately $4.6 billion in marketing and promoting the MONSTER™ brand, including the MONSTER Marks and the BEAST-Inclusive Marks. *Id.* ¶ 21. Accordingly, the MONSTER Marks and BEAST-Inclusive Marks have achieved widespread fame and recognition and are enormously valuable to Monster as symbols of Monster's reputation, goodwill, and quality of its products and services.

**B.** **Monster's Claims Against Thunder Beast and Stephen Norberg in the USPTO and in This Court**

In January 2016, Monster filed with the USPTO a petition for cancellation of Thunder Beast's U.S. Trademark Reg. No. 4,772,758 for the mark THUNDER BEAST. Monster alleged that there was a likelihood of confusion between the THUNDER BEAST mark and Monster's various registered trademarks that include the term "BEAST." Dkt. No. 1 ¶ 37.

Sometime after the cancellation proceedings began, Defendants adopted a new bottle label for their THUNDER BEAST products that included a new slogan, "DRINK THUNDER, FIGHT MONSTERS!" The word "MONSTERS" appears directly above the word BEAST. *Id.* ¶¶ 39-40.



/ / /

*Id.* ¶ 39.  After learning of Defendants' infringement of Monster's MONSTER Marks and BEAST-Inclusive Marks based on the combined use of "MONSTERS" and "BEAST," Monster initiated the present action for trademark infringement, unfair competition, and cancellation of the THUNDER BEAST mark.

**C.    Defendants' Answer and Counterclaims**

On August 20, 2018, Defendants filed their Answer and Counterclaims. Dkt. No. 21.  The Counterclaims purport to assert a cause of action for unfair competition under California Business & Professions Code Section 17200.  *Id.* at 16-17 ¶¶ 23-30.   The only act of unfair competition alleged in the Counterclaim is Monster's filing of the Complaint in the present case.  *Id.*  In particular, Defendants allege that "[t]he purpose of MEC's complaint was to financially cripple Thunder Beast, and not to enforce its trademarks or any of the other supposed rights set forth in the complaint" and "to prevent or delay a judgment from being entered against it in TTAB Cancellation No. 92063037." *Id.* at 16 ¶¶ 23-24.  Defendants further allege that Monster filed its complaint against Defendants in bad faith.  *Id.* at 16-17 ¶¶ 25-29.

In the Answer, Defendants also assert affirmative defenses of trademark misuse and unclean hands.  With respect to trademark misuse, Defendants allege that "Plaintiff has asserted its trademarks against Defendants for the improper purposes of unfair competition, financial oppression, and delay, knowing that Defendants have not infringed Plaintiff's rights."  Dkt. No. 21 at 10:15-19. Defendants base their unclean hands affirmative defense on the allegations set forth in Defendants' Counterclaims.  *Id.* at 10:20-23.  As just mentioned, those

/ / /

/ / /

/ / /

/ / /

Counterclaims assert unfair competition based upon the filing of Monster's complaint.[1]  *Id.* at 16-17 ¶¶ 23-30.

### III. <u>LEGAL STANDARDS</u>

### A.   <u>Anti-SLAPP Special Motion to Strike</u>

California Code of Civil Procedure Section 425.16(b)(1) provides that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition . . . under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  Cal. Civ. Proc. Code § 425.16(b)(1).  Anti-SLAPP motions may be brought against California state law claims filed in federal court.  *See U.S. ex rel. Newsham*, 190 F.3d at 970-73; *Thomas v. Fry's Elecs., Inc.*, 400 F.3d 1206, 1206-07 (9th Cir. 2005) (per curiam).

An anti-SLAPP motion is based on a two-prong inquiry.  First, the court asks whether the movant has shown that the cause of action arises from an act in furtherance of the movant's right to petition the government or right to free speech.  *Graham-Sult v. Clainos*, 756 F.3d 724, 735 (9th Cir. 2013).  If so, the burden shifts to the non-moving parties to show through evidence that they have a reasonable probability of prevailing on the merits of their claim.  *Id.*; *see also Kashian v. Harriman*, 98 Cal. App. 4th 892, 906 (2002).  In making this showing, the non-moving parties must show that they have a reasonable probability of surviving defenses, specifically including the litigation privilege of California Civil Code Section 47(b).  *See Kashian*, 98 Cal. App. 4th at 912-13.

---

[1] Defendants have also asserted a Counterclaim seeking a declaration of non-infringement of Monster's trademarks, but this Counterclaim plainly does not form the basis of the unclean hands defense.

**B.    Motions to Strike Under Federal Rule of Civil Procedure 12(f)**

Under Rule 12(f), a court may "strike from a pleading an insufficient defense. . . ."  Fed. R. Civ. P. 12(f).  A motion to strike allows a litigant "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ."  *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983); *see also Ganley v. Cty. Of San Mateo*, 2007 WL 902551, at *2 (N.D. Cal. Mar. 22, 2007) ("In the Ninth Circuit, motions to strike are proper, even if the material is not prejudicial to the moving party, if granting the motion would make trial less complicated or otherwise streamline the ultimate resolution of the action.").  An affirmative defense may be insufficient as a matter of pleading or as a matter of law.  *Cal. Brewing Co. v. 3 Daughters Brewing LLC*, No. 2:15-cv-02278-KJM-CMK, 2016 WL 4001133, at *1 (E.D. Cal. July 25, 2016).  An affirmative defense is insufficient as a matter of law when "it lacks merit under any set of facts the defendant might allege."  *Id.* (citation omitted).

## IV.   THE UNFAIR COMPETITION COUNTERCLAIM SHOULD BE DISMISSED UNDER CALIFORNIA'S ANTI-SLAPP STATUTE

Defendants' Counterclaim of unfair competition under California Business and Professions Code Section 17200 should be stricken under the California Anti-SLAPP statute because the counterclaim is predicated entirely upon Monster's constitutionally protected filing of the Complaint in this action.  Furthermore, Defendants cannot show any reasonable probability of success on their unfair competition counterclaim for three independent reasons:  (1) the claim is barred by the litigation privilege, as codified in California Civil Code Section 47(b), (2) Defendants have no evidence to support their allegation of bad faith, and (3) Defendants lack standing to bring their unfair competition counterclaim.

/ / /

**A.**     **Defendants' Unfair Competition Counterclaim Is Based on Monster's**
**Filing of Its Complaint in this Action – A Protected Act**

In considering an Anti-SLAPP motion, courts first determine whether the cause of action arises from "an act in furtherance of the defendant's rights of petition or free speech." *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 595 (9th Cir. 2010) (citation omitted).  It is well-settled law that the act of filing a lawsuit is protected petitioning activity within the meaning of the California Anti-SLAPP statute. *Action Apartment Ass'n v. City of Santa Monica*, 41 Cal. 4th 1232, 1249 (2007) (quoted in *James Glidewell Dental Ceramics v. Keating Dental Arts*, No. SACV11-01309-DOC, 2013 WL 655314, at *13 (C.D. Cal. Feb. 21, 2013)).   Here, Defendants' unfair competition counterclaim is indisputably based on Monster's filing of its complaint in the instant action. *See* Dkt. No. 21 at 16-17 (alleging that Monster committed unfair competition by filing its complaint against Defendants for ulterior motives).   Accordingly, California's Anti-SLAPP statute is applicable to the unfair competition counterclaim.

**B.**     **Defendants Cannot Show a Reasonable Probability of Success on**
**Their Counterclaim Because the Counterclaim Is Barred by the**
**Litigation Privilege**

After a showing that the counterclaim is based on protected activity under the California anti-SLAPP statute, the burden shifts to the non-moving parties to show through evidence that they have a reasonable probability of success on their counterclaim. *Graham-Sult*, 756 F.3d at 740-41.  The non-moving party may meet this burden if "the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Id.* at 741 (quoting *Mindys*, 611 F.3d at 599).  Here, Defendants cannot meet this burden because their / / /

counterclaim is entirely barred by the litigation privilege. Cal. Civ. Code § 47(b).

California's litigation privilege extends to any communication "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that has some connection or logical relation to the action." *Graham-Sult*, 756 F.3d at 741 (internal citations and alterations omitted). "The [litigation] privilege immunizes defendants from virtually any tort liability (including claims for fraud), with the sole exception of causes of action for malicious prosecution." *Id.* (internal quotations and citations omitted). Courts have routinely held that the filing of a pleading falls squarely within the protections of the litigation privilege. *See, e.g., James R. Glidewell*, 2013 WL 655314, at *13; *Kashian*, 98 Cal. App. 4th at 920-21. Because Monster's complaint in this case is the basis for Defendants' unfair competition counterclaim, the litigation privilege is a complete bar to that counterclaim.

Moreover, malicious prosecution—the only recognized exception to the litigation privilege—cannot form the basis of Defendants' unfair competition counterclaim as a matter of law. *Rubin v. Green*, 4 Cal. 4th 1187, 1194 (1993); *Graham-Sult*, 756 F.3d at 741. The malicious prosecution tort requires a lawsuit that "(1) was commenced by or at the direction of the defendant and was pursued to a legal determination favorable to the plaintiff, (2) was brought without probable cause, and (3) was initiated with malice." *Nunez v. Pennisi*, 241 Cal. App. 4th 861, 872-73 (2015) (citation omitted). The current lawsuit has not been resolved in favor of Defendants. Thus, as a matter of law, it cannot form the basis for a malicious prosecution counterclaim. *Babb v. Superior Court*, 3 Cal. 3d 841, 845-46 (1971) ("[T]he plaintiff in a malicious prosecution action must plead and prove that the prior judicial proceeding of which he complains terminated in his favor. . . . Because of this requirement, it is obvious

that a defendant cannot cross-complain or counterclaim for malicious prosecution in the first or main action . . . ."); *Arista Records v. Sanchez*, No. CV 05-07046 FMC (PJWx), 2006 WL 5908359, at *1 n.2 (C.D. Cal. Mar. 1, 2006) ("Defendant's counterclaims do not state a claim for malicious prosecution because they do not address conduct that occurred in a prior action.").

Accordingly, Defendants' unfair competition counterclaim is barred by California's litigation privilege.  In addition, Defendants cannot meet their burden of making a prima facie showing through evidence that the factual allegations in their Counterclaim have merit.  *See Graham-Sult*, 756 F.3d at 740-41.  In particular, Defendants have no evidence to support their allegation that Monster filed this action in bad faith.  These specious allegations are based purely on hyperbolic arguments asserted by Defendants which have no basis in evidence or fact.  For each of these reasons, the Court should strike Defendants' counterclaim pursuant to California's Anti-SLAPP statute.

## C. To the Extent that Defendants Argue that the Counterclaim Is Also Based on the USPTO Cancellation Proceedings, Such Conduct Is Also Protected by the Anti-SLAPP Statute

During Monster's meet and confer with defense counsel regarding this motion, defense counsel suggested that the unfair competition counterclaim is also based on the concurrent cancellation proceedings Monster filed against Thunder Beast at the USPTO.  Such a reading of the counterclaim is untenable, as the counterclaim unambiguously refers exclusively to Monster's filing of the present lawsuit.  However, to the extent that Defendants argue or otherwise attempt to amend the counterclaim to include an allegation based on the USPTO proceedings, the Anti-SLAPP statute and litigation privilege are equally applicable to Monster's initiation of the USPTO proceedings and any conduct made in furtherance of the USPTO proceedings.

-10-

Monster's petition for cancellation of Thunder Beast's trademark and other papers submitted in the USPTO proceedings are protected petitioning activities within the meaning of the Anti-SLAPP statute because they are "writing[s] made before . . . [an] executive [or] . . . other official proceeding authorized by law."  Cal. Civ. Proc. Code § 425.16(e)(1); *see also Mindys Cosmetics,* 611 F.3d at 596 (holding that filing a trademark application is a protected act under the Anti-SLAPP statute); *ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993, 1009 (2001) (communications to an official administrative agency "designed to prompt action by that agency" are protected activities under the Anti-SLAPP statute).  Monster's petition for cancellation and subsequent filings in the USPTO proceedings were "designed to prompt" the USPTO, an administrative agency, to cancel Thunder Beast's registered trademark.  *ComputerXpress*, 93 Cal. App. 4th at 1009.  Accordingly, to the extent that Defendants allege or attempt to amend the counterclaim to allege unfair competition based on the USPTO proceedings, the counterclaim still arises out of Monster's protected petitioning activity.

Defendants also cannot show a reasonable probability of success on a claim based on the USPTO proceedings because the litigation privilege also extends to statements made in USPTO proceedings.  *Lockwood v. Sheppard, Mullin, Richter & Hampton, LLP*, No. CV 09-5157-JFW, 2009 WL 9419499, at *10 (C.D. Cal. Nov. 24, 2009) (holding that the litigation privilege applies to requests for reexamination of patents because such proceedings are quasi-judicial proceedings where quasi-judicial officials exercise quasi-judicial functions in their decisions regarding patentability).  Like a request for reexamination of a patent, a petition to cancel a trademark registration also involves quasi-judicial officials exercising quasi-judicial functions concerning an intellectual property right.  And both proceedings are filed with the identical administrative agency, the USPTO.  Accordingly, Monster's petition to cancel

Thunder Beast's trademark and any conduct occurring in those USPTO proceedings are protected by the litigation privilege.

## D. Defendants Lack Standing to Bring an Unfair Competition Counterclaim

Separate from and in addition to the litigation privilege and the complete absence of any supporting evidence, Defendants' unfair competition counterclaim also fails because Defendants lack standing.  To allege standing under California's unfair competition law, Defendants must allege facts sufficient to show that they lost money or property as a result of Monster's unfair business practices.  Cal. Bus. & Prof. Code § 17204; *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011).  However, attorneys' fees and costs of suit are not sufficient to confer standing under California's unfair competition law.  *See Cordon v. Wachovia Mortg.*, 776 F. Supp. 2d 1029, 1039 (N.D. Cal. 2011); *Reichman v. Poshmark, Inc.*, 267 F. Supp. 3d 1278 (S.D. Cal. 2017) ("[L]itigation costs incurred in bringing the present action are insufficient to constitute an economic injury required to establish standing.").

Here, Defendants alleged that "[t]he purpose of MEC's complaint was to financially cripple Thunder Beast" and that "Thunder Beast has suffered and will continue to suffer economic harm from MEC's actions."  However, beyond the attorneys' fees and costs associated with the USPTO proceedings and this lawsuit, Defendants have not identified any economic harm caused by Monster.  No injunction has yet been issued against Defendants and Defendants have continued to expand their business during the pendency of the USPTO proceedings and this lawsuit.  Defendants therefore lack standing to bring an unfair competition counterclaim.

/ / /

/ / /

/ / /

**E.      Monster Is Entitled to Attorneys' Fees Incurred in Bringing this Anti-SLAPP Motion**

The California Anti-SLAPP statute mandates that the "prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs."  Cal. Civ. Proc. Code § 425.16(c)(1).  The attorneys' fees provision was intended "to discourage such strategic lawsuits against public participation by imposing the litigation costs on the party seeking to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances."  *Ketchum v. Moses*, 24 Cal. 4th 1122, 1131 (2001) (internal quotations and citation omitted).   This provision applies in federal court.  *See U.S. ex rel. Newsham*, 190 F.3d at 972-73; *New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1115 (C.D. Cal. 2004) (awarding mandatory attorneys' fees to moving party).  Accordingly, Monster requests that the Court also award Monster its attorneys' fees and costs incurred as a result of bringing this Anti-SLAPP motion.

**V.   DEFENDANTS' UNCLEAN HANDS AND TRADEMARK MISUSE DEFENSES SHOULD BE STRICKEN**

**A.      The Unclean Hands Affirmative Defense Fails to Plead a Necessary Element and Is Based on Activity Protected by the *Noerr-Pennington* Doctrine**

**1.      Defendants Have Not Pled and Cannot Plead a Specific Intent to Deceive Customers**

Defendant's fifth affirmative defense alleges unclean hands "based on [Monster's] actions as set forth in the counterclaims below."  Dkt. No. 21 at 10. A defendant alleging unclean hands must show that (1) the plaintiff's conduct was inequitable, and (2) the plaintiff's inequitable conduct relates to the subject matter of its claims.  *Monster Energy Co. v. Integrated Supply Network LLC*, No. ED CV 17-548-CBM-RAO, 2018 WL 3357532, at *5 (C.D. Cal. June 4,

2018) (citing *2Die4Kourt v. Hillair Capital Mgmt., LLC*, No. SACV 16-1304-JVS, 2016 WL 4487895, at *9 (C.D. Cal. Aug. 23, 2016), *aff'd*, 692 F. App'x 366 (9th Cir. 2017)).  However, in the context of a trademark suit, "it is not enough that the trademark plaintiff engaged in misconduct regarding the trademark generally.  Rather, the trademark defendant must also show that the plaintiff used the trademark with the specific intent to deceive consumers." *Id.*

Here, Defendants make no allegation that Monster has used its trademarks with a specific intent to deceive consumers. *See* Dkt. No. 21 at 11-18.  At most, Defendants allege (1) that Monster filed a petition to cancel Thunder Beast's trademark at the USPTO, (2) that Monster has been aggressive in enforcing its trademark rights against various defendants, and (3) that the filing of the instant lawsuit constituted unfair competition. *Id.* at 13-14, 16-17.  None of these acts are directed to consumers, nor could these acts be construed as deceiving consumers.  Accordingly, Defendants have failed to plead and cannot plead a necessary element of their unclean hands affirmative defense.

## 2.    The Unclean Hands Affirmative Defense Is Based on Activity Protected by the *Noerr-Pennington* Doctrine

The alleged acts forming the basis for Defendants' unclean hands affirmative defense are also protected by the *Noerr-Pennington* doctrine.  Under the federal *Noerr-Pennington* doctrine, "[t]hose who petition government for redress are generally immune from antitrust liability." *Mantistee Town Ctr. v. City of Glendale*, 227 F.3d 1090, 1092 (9th Cir. 2000) (citation omitted).  Though originally rooted in antitrust law, the doctrine extends beyond antitrust statutes and also bars causes of action and defenses that implicate the right to petition the government for redress. *See James R. Glidewell*, 2013 WL 655314, at *13-14 (holding *Noerr-Pennington* doctrine precluded liability for filing trademark infringement lawsuit); *Monster Energy Co.*, 2018 WL 3357532, at *4 / / /

-14-

1  (*Noerr-Pennington* doctrine precludes trademark misuse defense based on

2  alleged trademark bullying).

3      Monster's petition to cancel Thunder Beast's trademark before the

4  USPTO and complaint in the present action are unquestionably protected

5  petitioning activities under the *Noerr-Pennington* doctrine.  *Monster Energy*,

6  2018 WL 3357532, at *4 ("Plaintiff's filings with the USPTO and the courts . . .

7  are protected under the *Noerr-Pennington* doctrine."); *see also Adidas Am., Inc.*

8  *v. TRB Acquisitions LLC*, No. 3:15-cv-2113-SI, 2017 WL 337983, at *4-8 (D.

9  Or. Jan. 23, 2017) (dismissing affirmative defenses of unclean hands and

10 trademark misuse because allegations were based on conduct protected by the

11 *Noerr-Pennington* doctrine).

12     The "sham" litigation exception to the *Noerr-Pennington* doctrine does

13 not apply here.  Under this exception, the *Noerr-Pennington* doctrine does not

14 protect petitioning activity if it is a "mere sham to cover . . . an attempt to

15 interfere directly with the business relationships of a competitor."  *Prof'l Real*

16 *Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 51 (1993)

17 (internal citations omitted and alterations in original).  The Ninth Circuit has

18 identified three scenarios where the "sham" exception may apply: (1) where the

19 lawsuit is objectively baseless and the defendant's motive in bringing it was

20 unlawful, (2) where there has been a series of lawsuits "brought pursuant to a

21 policy of starting legal proceedings without regard to the merits and for an

22 unlawful purpose," and (3) where the unlawful conduct consists of making

23 misrepresentations to the court.  *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 938 (9th

24 Cir. 2006).  None of these three situations are present here.

25     First, a lawsuit is objectively baseless if "no reasonable litigant could

26 realistically expect success on the merits."  *Prof'l Real Estate Inv'rs*, 508 U.S.

27 at 60.  Monster initiated this lawsuit because Defendants chose to adopt a new

28 bottle label that includes the word "MONSTERS" in close proximity to the

word "BEAST" during the pendency of the USPTO cancellation proceedings when Defendants were on notice of Monster's rights in the Monster Marks and BEAST Marks.  *See* Dkt. No. 1.  Defendants even admitted in their Answer that they were aware of Monster's rights when they chose to adopt the new label. Dkt. No. 21 at 7 ("Also admitted that Defendants were aware of Plaintiff's rights when it launched its new label . . . .").

Here, Defendants are using Monster's two most prominent trademarks on a competing soda product.  Therefore, a reasonable litigant in Monster's position could expect success on the merits of Monster's claims against Defendants.  As one court in this District has explained:  "to the extent that Plaintiff owns a federally-registered trademark and is attempting to enforce it against a competitor with an arguably similar mark, Defendant cannot state that 'no reasonable litigant' could expect success on the merits of Plaintiff's claim." *James R. Glidewell*, 2013 WL 655314, at *14.  *See also White v. Lee*, 227 F.3d 1214, 1232 (9th Cir. 2000) ("We do not lightly conclude in any *Noerr-Pennington* case that the litigation in question is objectively baseless, as doing so would leave that action without the ordinary protections afford by the First Amendment, a result we would reach only with great reluctance.").

Defendants allege in conclusory fashion that Monster's claims "are without merit." Dkt. No. 21 at 16 ¶ 25.  Such a conclusory allegation should be accorded no weight on a motion to dismiss.  *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).  In any event, an allegation that claims "are without merit" falls far short of an allegation that the claims are objectively baseless.

Second, Defendants also have not and cannot allege that Monster has a policy of filing matters before the USPTO and the courts without regard to the merits and for an unlawful purpose.  *See Monster Energy Co.*, 2018 WL 3357532, at *4 n.7.  While Defendants have alleged that Monster has been

-16-

aggressive in enforcing its trademark rights, sometimes drawing critical commentary, Dkt. No. 21 at 14 ¶ 14, Defendants cannot point to any case where Monster was found to have filed an objectively baseless claim. *See Adidas*, 2017 WL 337983, at \*6 (declining to extend "sham" litigation exception where defendant could not identify a single lawsuit that was purportedly baseless).

Additionally, Monster's allegedly aggressive enforcement of its trademarks against infringers does not constitute an unclean hands defense because Monster is entitled to protect its intellectual property. "Aggressively promoting and protecting a trademark, however, does not constitute unclean hands. Indeed, in view of the strength of the mark and the very substantial good will attaching to it, plaintiffs can be expected to be, and are entitled to be, aggressive in asserting their trademark rights against others." *Gateway, Inc. v. Companion Prods., Inc.*, 320 F. Supp. 2d 912, 928 (D.S.D. 2002) (internal quotations and alterations omitted) (cited by *Monster Energy*, 2018 WL 3357532, at \*4 n.6 ("Plaintiff's conduct in enforcing its trademark rights with the courts and in USPTO proceedings does not constitute 'misuse.'")).

Finally, Defendants also have not alleged that Monster made misrepresentations to this Court – the third recognized type of "sham" litigation. Because none of the three "sham" litigation exceptions apply, Defendants' unclean hands defense is barred by the *Noerr-Pennington* doctrine and should be stricken.

**B.** **Defendants' Trademark Misuse Defense Is Also Barred by the *Noerr-Pennington* Doctrine and Is Duplicative of the Unclean Hands Defense**

Defendants' fourth affirmative defense alleges trademark misuse "because Plaintiff has asserted its trademarks against Defendants for the improper purposes of unfair competition, financial oppression, and delay, knowing that Defendants have not infringed Plaintiff's rights." Dkt. No. 21 at

-17-

10.   Again, the thrust of Defendants' trademark misuse defense is that Monster has enforced its trademarks against Defendants in this Court and before the USPTO.   As discussed above, Monster's enforcement activities in the courts and before the USPTO are protected activities under the *Noerr-Pennington* doctrine, and the sham exception is inapplicable.   *Monster Energy*, 2018 WL 3357532, at *4 n.6 ("Plaintiff's conduct in enforcing its trademark rights with the courts and in USPTO proceedings does not constitute 'misuse.'").   Thus, Defendants' trademark misuse affirmative defense fails as a matter of law.

Additionally, courts have found that the trademark misuse defense is wholly subsumed within the unclean hands defense and that it is appropriate to strike the trademark misuse affirmative defense when unclean hands has also been pled.   *TSX Toys v. 665, Inc.*, No. EDCV 14-02400-RGK, 2015 WL 12746211, at *9 (C.D. Cal. Sept. 23, 2015); *Gibson Brands v. John Hornby Skewes & Co.*, No. CV 14-00609-DPP, 2014 WL 4187979, at *5 (C.D. Cal. Aug. 22, 2014).   As is evident from Defendants' allegations in support of its trademark misuse defense, this defense is entirely duplicative of Defendants' unclean hands defense.   For this reason as well, the Court should strike Defendants' trademark misuse affirmative defense.

## C.   **The Court Should Not Grant Leave to Amend Because the Affirmative Defenses Are Insufficient as a Matter of Law**

In granting a motion to strike, courts have broad discretion to grant or deny leave to amend.   *RDF Media Ltd. v. Fox Broadcasting Co.*, 372 F. Supp. 2d 556, 561 (C.D. Cal. 2005).   A court may deny leave to amend "where the amendment would be futile . . . or where the amended complaint would be subject to dismissal."   *Id.* (citations omitted).   Here, because the affirmative defenses fail as a matter of law, the Court should not grant Defendants leave to amend.

/ / /

# VI.  CONCLUSION

For the foregoing reasons, Monster respectfully requests that the Court strike Defendants' counterclaim for unfair competition pursuant to California Business & Professions Code § 17200 and that the Court strike Defendants' affirmative defenses of unclean hands and trademark misuse.  Monster further requests that the Court grant Monster its reasonable attorneys' fees and costs incurred as a result of bringing the Anti-SLAPP portion of this motion.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated:  September 10, 2018      By:  */s/ Matthew S. Bellinger*
                                  Steven J. Nataupsky
                                  Lynda J. Zadra-Symes
                                  Matthew S. Bellinger
                                  Daniel C. Kiang

                                  Attorneys for Plaintiff,
                                  MONSTER ENERGY COMPANY

28848574