Eve J. Brown (CA SBN 247051)
ebrown@bglaw.com
BARTON GILMAN LLP
10 Dorrance Street, Suite 800
Providence, RI 02903
p: 401.273.7171
f: 401.273.2904

Attorney for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONSTER ENERGY COMPANY, a Delaware corporation,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>THUNDER BEAST LLC, a District of Columbia limited liability company, and STEPHEN NORBERG, an individual,<br><br>　　　　　Defendants. | Case No. 5:18-cv-01367-AB-AS<br><br>**OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE DEFENDANTS' COUNTERCLAIM AND AFFIRMATIVE DEFENSES**<br><br>Date:　　October 19, 2018<br>Time:　　10:00 a.m.<br>Ctrm:　　7B<br><br>Hon. André Birotte Jr. |

1

Defendants hereby submit their response in opposition to Plaintiff's Motion to Strike. For the reasons set forth below, Defendants respectfully request that the Court deny Plaintiff's Motion and allow Defendants' claims and defenses to be properly investigated through fact discovery and a hearing on the merits.

## I. INTRODUCTION

It is understandable that Plaintiff does not want Defendants' claims and defenses to see the light of day. Defendants have accused Plaintiff of serious and intentional wrongdoing. Naturally, Plaintiff would prefer if such allegations were stricken. Unfortunately for Plaintiff, litigants do not get to strike claims and defenses they dislike. The adversarial system carefully safeguards each party's right to gather facts relevant to their claims, and to be heard on the merits of their respective case. Here, Defendants have properly set forth affirmative defenses and counterclaims for which they have ample factual support and evidence. Defendants are entitled to the opportunity to corroborate their evidence through the discovery process, and to bring those claims and defenses that survive fact investigation before this Court for substantive adjudication.

## II. ISSUE TO BE DECIDED

The Court must decide whether Plaintiff has satisfied the strict requirements under Rule 12(f) of the Federal Rules of Civil Procedure to preliminarily strike matter from Defendants' Answer and Counterclaims prior to fact discovery, investigation, or substantive discussion of those claims.

## III. RELEVANT FACTS

Defendants have been operating a small-batch, craft root beer business under their THUNDER BEAST mark since 2012. In 2016, after Defendants had been thriving for four

years without complaint or interference, Plaintiff petitioned the United States Patent and Trademark Office to cancel Defendants' trademark registration. Plaintiff's action against Defendants was one of one thousand eleven (1,011) similar proceedings brought by Plaintiff against third-party users of the words "MONSTER" or "BEAST" before the U.S. Trademark Trial and Appeal Board. *See* TTABVUE, the Trademark Trial and Appeal Board Inquiry System, available at: https://www.ttabvue.gov (last visited September 28, 2018) (listing forty-one pages of results for proceedings instituted by Plaintiff Monster Energy Company since 2010).

Contrary to Plaintiff's claims, these 1,011 proceedings were not thoughtfully instituted against malfeasants or opportunistic copycats. Instead, they were indiscriminately and automatically filed by Plaintiff against nearly *every new trademark application* incorporating those dictionary words Plaintiff seeks to monopolize exclusively for itself. On information and belief, Plaintiff learns of each such application by employing a trademark watch service, which alerts Plaintiff to any database entry in the United States Patent and Trademark Office's TESS (Trademark Electronic Search System) that meets Plaintiff's criteria; specifically, *any entry at all* that includes "MONSTER" or "BEAST," in any format, and for any goods or services, regardless of how far extenuated or dissimilar they may be to Plaintiff's MONSTER ENERGY marks.[1] Plaintiff then institutes proceedings against each newcomer, filing motion upon extraneous motion and clogging the court's dockets until the competition defaults or surrenders.

Plaintiff is well-known for its wielding of litigation and the threat of litigation to secure a

---

[1] Examples of defendants Plaintiff has sought to crush through its notoriously aggressive litigation tactics range from plush toy maker PILLOW MONSTER, to online fish hobbyist forum MONSTERFISHKEEPERS, to vehicle tow hook manufacturer MONSTER HOOKS, to oversized beach towel retailer MONSTER TOWEL. Plaintiff has even attempted to bully Disney out of incorporating the word MONSTER into MONSTERS UNIVERSITY merchandise.

- 2 - Opposition to Motion to Strike

monopoly over dictionary words far greater than the Lanham Act allows. In 2012, 2013, 2014, 2015, 2016, and 2017, Plaintiff was honored with the title of this country's "Biggest Trademark Bully" by Trademarkia.com, based on the sheer number of proceedings it has filed and the lack of basis for each complaint.[2]  Plaintiff has also been highlighted by legal scholars as an illustrative example of trademark bullying behavior, in peer-reviewed articles examining and denouncing such practices. *See, e.g.,* Leah Chan Grinvald,  *Shaming Trademark Bullies*, 2011 WIS. L. REV. 625 (2011) (citing one micro-brewery's resistance to Plaintiff as an example of a growing trend by small businesses of defending themselves against meritless enforcement actions such as those routinely brought by Plaintiff); Sara Marie Andrzejewski, *Leave Little Guys Alone: Protecting Small Businesses from Overly Litigious Corporations and Trademark Infringement Suits,* 19 J. INTELL. PROP. L. 117 (2011-2012) (referencing Plaintiff as an example of an overly litigious corporation); Jason Vogel & Jeremy A. Schachter, *How Ethics Rules Can Be Used to Address Trademark Bullying*, 103 TRADEMARK REP. 503 (2013) (stating that Plaintiff's trademark bullying served as the actual catalyst for Senator Patrick Leahy to include a trademark bullying study in the Trademark Technical and Conforming Amendment Act of 2010, which examined the negative impact of such behaviors on small businesses and on the U.S. economy).

     Plaintiff has additionally been featured for its bogus "enforcement" actions in numerous media outlets and websites, including the aptly titled "*Monster Energy: The World's Biggest Bully When It Comes to Small Businesses,*" available at https://www.energydrinkslawsuit.com/monster-energy-worlds-biggest-bully/ (last visited Aug.

---

[2] Plaintiff dipped to number two in 2018. *See* https://www.trademarkia.com/opposition/opposition-brand.aspx.

- 3 -      Opposition to Motion to Strike

8, 2018). Several publications have even weighed in on Plaintiff's instant attack against Defendants. *See* Timothy Geigner, *Monster Energy Attempts to Run from Laughable Trademark Spat It Started with Thunder Beast Root Beer*, Techdirt. (2017), available at: https://www.techdirt.com/articles/20170329/09452237034/monster-energy-attempts-to-run-laughable-trademark-spat-it-started-with-thunder-beast-root-beer.shtml (last visited Aug. 8, 2018); Steve Birr, *Monster Energy Tries to Crush Small Business Brewery In DC*, The Daily Caller, 2016, available at: http://dailycaller.com/2016/03/12/monster-energy-tries-to-crush-small-business-brewery-in-dc/ (last visited Aug. 8, 2018).

As implied by Mr. Geigner's article cited above, Plaintiff's original TTAB proceeding against Defendants did not progress well for Plaintiff. For more than two years, Plaintiff and Defendants engaged in rigorous litigation before the Trademark Trial and Appeal Board, including the taking of multiple discovery and testimonial depositions, the submission of hundreds of pages of evidence, and the filing of final trial briefs. Despite its efforts, and despite what has now been *eight years* of conspicuous co-existence in the marketplace, Plaintiff failed to uncover a **single instance** of actual or potential confusion between Defendants' mark and its own, nor was it able to show a modicum of bad faith or intent on the part of Defendants. Plaintiff attempted to stop the proceeding before it resulted in a damaging judgment against it (one which would presumably have a cascade effect on the thousands of other cases it has and/or intends to bring). Defendants steadfastly insisted upon continuing towards what they hoped would be a precedential decision.

On June 27, 2018, in an eleventh hour ploy to avoid a TTAB precedential decision, Plaintiff filed the instant action against Defendants, then immediately motioned to suspend the TTAB case. Respectfully deferring to this Court, the TTAB stopped the clock on the Board

proceeding. Thus, here we stand, starting over from scratch, preparing for another several years of duplicative bad faith litigation.

Plaintiff undoubtedly hopes that another several years of litigation will finally be too much for Defendants and that Defendants will capitulate. Plaintiff's motives are certainly **not**, as Plaintiff claims, the redress of putative harm caused by Defendants' "new" slogan, "DRINK THUNDER. FIGHT MONSTERS." Indeed, Plaintiff has known of Defendants' "FIGHT MONSTERS" slogan for over a year, at least as early as March 30, 2017, when Plaintiff questioned Defendants *ad nauseum* about the slogan during Plaintiff's deposition of Defendant Norberg. *See* discovery deposition transcript of Stephen Norberg in TTAB Cancellation No. 92063037, entered into the record previously as Exhibit C to Docket Entry 21.

Moreover, Plaintiff is well aware that Defendants' "FIGHT MONSTERS" slogan is used in a noncommercial manner to criticize and comment specifically upon Plaintiff's misuse of the judicial system. Defendants' use of "FIGHT MONSTERS" is a commentary on Plaintiff's abusive treatment of small businesses, and a call to action to other bullying victims. It is not, as is clear by the context in which it appears, an attempt to deceive consumers into believing that Plaintiff and Defendants are affiliated, or to infringe upon Plaintiff's marks. Indeed, Defendants use "FIGHT MONSTERS" to very expressly distance themselves from Plaintiff, rather than insinuating any commercial connection whatsoever. *See* excerpts from Defendants' website, www.drinkthunderbeast.com, shown below:



Thunder Beast vs Monster Energy Co

**Thunder Beast**    Home   Epic Battle   Story   Fight   Order   Contact

**THUNDER BEAST vs MONSTER ENERGY**

Overview   Contenders   Timeline   Monsters

### Epic Trademark Battle

Thunder Beast has been locked in an absurd legal battle with the billionaire bullies of Monster Energy Co. (MEC). MEC is notorious in the trademark world for starting more trademark disputes than any other US company over the last few years.

**"Monster Energy has truly been a monster when it comes to trademark bullying over some of the most frivolous claims imaginable"** -Techdirt.com 3/30/2017

MEC has demonstrated a repeated pattern of bullying small businesses into changing their names and giving up their brands. There are hundreds of examples. The few small businesses willing and able to hire expensive legal representation are frequently silenced because MEC tends to offer to drop the case or "settle" in exchange for a Non-Disclosure Agreement that effectively silences the victims.

But not Thunder Beast. Thunder Beast has steadfastly stood their ground, refusing to yield to the rich and powerful bullies. Thunder Beast fights for truth and justice! Because bullying is *never* okay.

- In 2016, MEC aggressively went after Thunder Beast through the US Patent and Trademark Office. A few months later -- after it was clear Thunder Beast had a lot of fight in them -- MEC tried to settle. But Thunder Beast refused! In the spring of 2017, MEC deposed Thunder Beast for one and a half days, only to later attempt to get the entire deposition thrown out, claiming it was somewhow unfair. In 2018, MEC hired a consultant who couldn't find any evidence to support their ridiculous claims. At the very last second, after all the trial briefs had been submitted, MEC filed a motion in June 2018 to prevent the ruling from coming out.
- Also in June 2018, MEC filed a federal lawsuit in California, claiming Thunder Beast was deceptive, unfair, fraudulent, and maliciously oppressing the billionaires! MEC currently claims to be suffering "irreparable injury" in California at the hands of one man who makes ridiculously delicious root beer sold at farmers markets and local stores and restaurants on the opposite side of the country in Washington DC. Interesting fact: MEC is also claiming a 400 million dollar increase in net sales in 2017 in the midst of all their "suffering" and "oppression."
- In response, Thunder Beast immediately put "Are you afraid of Monsters, or are the Monsters afraid of you?" on all their new products, and filed a countersuit.

Thunder Beast believes their stand against bullying is symbolic of something far bigger. They hope to use their passion for craft soda to inspire others to chase their own dreams, and fearlessly stand against the monsters and bullies we all face in life. Thunder Beast now donates 10% of their profits to "Fight Monsters" -- their initiative that stands up to the greater evils of society like bullying and human trafficking.

Read MEC's lawsuit in its laughable entirety, as MEC desperately begs the court to make Thunder Beast stop "oppressing" them!

Read Thunder Beast's epic counterclaim seeking truth and justice, and holding MEC accountable for their actions.

http://www.drinkthunderbeast.com/thunderbeastvmonsterenergyco.html[9/28/2018 4:45:45 PM]



Because of the nature and context of Defendants' incorporation of "MONSTERS" into its slogan, Defendants' use of "FIGHT MONSTERS" is explicitly statutorily exempt from liability, and could not serve as the basis for Plaintiff's suit. Plaintiff's claims are a transparent grasp at straws.

In short, Plaintiff has exhibited a clear pattern of leveraging abusive litigation tactics to financially exhaust others who deign to incorporate certain dictionary words into their own brand names, including Defendants. The broad aim of Plaintiff's 1000+ lawsuits is to skirt the Lanham Act and antitrust laws by using scurrilous legal proceedings to quash competition, thereby gaining an unlawful monopoly on common words. In this case, the secondary result of Plaintiff's action, if successful, would be to force Defendants, specifically, out of business by preventing them from operating under the name, reputation, consumer recognition, and goodwill they have now spent eight years cultivating.

The facts above are more than sufficient to serve as solid bases for Defendants' Counterclaims and Affirmative Defenses.

### IV. LEGAL STANDARD

Rule 12(f) defines a narrow category of material that a party may move to strike from a pleading; namely, "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Rule 12(f) motions are generally disfavored, and they should be denied "unless it is clear that the matter to be stricken can have no possible bearing upon the subject matter of the litigation." Naton v. Bank of Cal., 72 F.R.D. 550, 552 n.4 (N.D. Cal. 1976).

The purpose of a legitimate motion to strike is to avoid wasting time and money litigating "spurious" or "frivolous" issues. Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993). Courts are "very reluctant" to resolve any issue that is not clearly frivolous in such motions, especially those that are "disputed or substantial." McArdle v. AT&T Mobility LLC, 2009 U.S. Dist. LEXIS 89231, at *24–25 (N.D. Cal. Sept. 14, 2009) (disputed or substantial legal issues are "properly . . . determinable only after discovery and a hearing on the merits.").

The Ninth Circuit has a particularly well-established disfavor of motions to strike. 5 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 1381 (4th ed. 2013-2017); *see also* SEC v. Gendarme Capital Corp., et al., No. 2:11-CV-00053-KJM-KJN, 2012 WL 346457, *1 (E.D. Cal. 2012) ("motions to strike are disfavored and infrequently granted"); Allen v. Woodford, No. 1:05-CV-01104-OWW-LJO, 2006 WL 1748587, *20 (E.D. Cal. 2006); Bassiri v. Xerox Corp., 292 F.Supp.2d 1212, 1220 (C.D. Cal. 2003); Quintana v. Baca, 233 F.R.D. 562, 564 (C.D. Cal. 2005) ("[m]otions to strike are generally regarded with disfavor"); U.S. v. Iron Mountain Mines, Inc., 812 F. Supp. 1528, 1535 (E.D. Cal. 1992) ("a

motion to strike an affirmative defense will not be granted unless it appears to a certainty that plaintiffs would succeed despite any state of facts which could be proved in support of the defense"); Colaprico v. Sun Microsystems, Inc., 758 F. Supp. 1335, 1339 (N.D. Cal. 1991) (motions to strike must not be granted "unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation"); United States v. 729.773 Acres of Land, More or Less, Situated in City and County of Honolulu, 531 F. Supp. 967, 971 (D. Haw. 1982) ("A motion to strike is a severe measure and it is generally viewed with disfavor."); Hernandez v. Balakian, 480 F.Supp.2d 1198 (E.D. Cal. 2007) (describing motions to strike affirmative defenses as having a "dilatory and often harassing character").

## V. ARGUMENT

### a. Defendants' Unfair Competition Counterclaim Meets or Exceeds Ninth Circuit Pleading Standards

Plaintiff seeks to strike Defendants' counterclaim of unfair competition pursuant to Fed. R. Civ. P. Rule 12(f). In evaluating Plaintiff's motion, Rule 12(f) must be read in conjunction with Fed. R. Civ. P. 8, which provides general pleading standards, to determine whether Defendants' counterclaim has met federal pleading requirements. *See* 5 Charles Alan Wright & Arthur Miller, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 1274 (3d ed. 2013); Ileto v. Glock Inc., 349 F.3d 1191, 1199–200 (9th Cir. 2003). If a pleading meets Rule 8's requirements, it should not be stricken.

Rule 8(b) requires merely that a pleading that states a claim for relief must contain:

(1) a short and plain statement of the grounds for the court's jurisdiction;

(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3) a demand for the relief sought, which may include relief in the alternative or

- 10 -                                         Opposition to Motion to Strike

different types of relief.

In conjunction with Rule 8, two seminal cases govern the adequacy of pleaded allegations in federal complaints: *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). In these cases, the Supreme Court held that a plaintiff must plead sufficient facts in a complaint to show "a plausible entitlement to relief."

Here, Defendants' unfair competition counterclaim provides all of the above, in detail. Defendants specify grounds for the court's jurisdiction, which is not in dispute. Then, Defendants provide a thorough statement explaining Defendants' claims, the bases for such claims, and why Defendants are entitled to relief on those claims.

Specifically, Defendants state that Plaintiff's lawsuit is a sham proceeding instituted not for the stated purpose of trademark enforcement, but to financially cripple Defendants, to impede the judicial process in parallel TTAB Cancellation No. 92063037, and to systematically seize an unlawful monopoly of common dictionary words to which it is not entitled under law, all of which caused and will continue to cause economic harm to Defendants. Defendants further allege that Plaintiff has intentionally and knowingly invoked spurious claims in a manner that is unlawful, unfair, wrongful, malicious, and fraudulent, in that they constitute the making of frivolous claims, among other wrongdoing.

Frivolous trademark infringement actions, and the threat of them, are forms of unfair competition, as is abuse of the litigation process. Case law provides ample authority for Defendants' contention that Plaintiff engaged in unfair competition through its pattern of frivolous and vexatious filings. *See* LaMaur, Inc. v. Alberto-Culver Co., 1973 WL 917, *2, 179 U.S.P.Q. 607 (D. Minn. 1973), aff'd, 496 F.2d 618 (8th Cir.), cert. denied, 419 U.S. 902, 42 L.Ed.2d 148, 95 S.Ct. 186 (1974) ("malicious or excessive threats which go to companies whose

- 11 -                                    Opposition to Motion to Strike

activities could not possibly be considered as infringing . . . might be construed as an effort to extend a trademark monopoly beyond its legal limits"); Puritan Sportswear Corp. v. Shure, 307 F.Supp. 377, 390, 165 U.S.P.Q. 71 (W.D. Pa. 1969) ("[a] claim of trademark infringement must be carefully scrutinized to ensure that trademarks and the threat of trademark litigation is not, in essence, used in restraint of trade").

The unfair and frivolous nature of Plaintiff's actions is also evidenced by the sheer number of cases it has filed. Courts have found sanctionable frivolousness in cases in which a plaintiff has filed far less than the 1000+ complaints filed by Plaintiff Monster Energy Company. *See, e.g.*, Wood v. Santa Barbara Chamber of Commerce, Inc., 705 F.2d 1515, 1523, 1526 (9th Cir.1983) (the filing of thirty-five separate actions by a single plaintiff resulted in a finding that plaintiff was engaged in unlawful frivolous litigation); In re Oliver, 682 F.2d 443, 444 (3d Cir.1982) (more than fifty cases was deemed an "inordinate" number for the purpose of determining frivolousness).

Plaintiff's pattern of frivolous and abusive litigation, as shown by the staggering number of complaints it has filed in various tribunals and jurisdictions,[3] and as indicated by Plaintiff's public notoriety for such practices as shown in numerous published articles, websites, and journals, provide significant grounds for Defendants' claim. *See* Ringgold-Lockhart v. County of Los Angeles, 761 F.3d 1057 (9th Cir. 2014). Such grounds may only grow stronger once discovery ensues.

Together with Defendants' specific demand for relief, the above facts and allegations render Defendants' Counterclaim proper under Rule 8.

---

[3] In addition to the 1,011 TTAB proceedings mentioned previously, Plaintiff has filed over fifty similar actions in various state and federal courts, including several in this district, as well as lawsuits in N.D. Ill., E.D. Cal., M.D. Fla., and E.D. NY, among others.

- 12 - Opposition to Motion to Strike

### b. Defendants' Unfair Competition Counterclaim is Not Barred by Either the Anti-SLAPP Statute Nor the Litigation Privilege

Even though Defendants have easily met the pleading standards of Fed. R. Civ. P. 8 and *Twombley-Iqbal*, Plaintiff argues that Defendants' counterclaim is barred by the California anti-SLAPP statute and by the litigation privilege, as codified in California Civil Code Section 47(b). Plaintiff's arguments lack merit.

A cause of action is subject to being stricken under the anti-SLAPP statute only if it "arises from **protected** speech or petitioning and lacks even **minimal** merit." Navellier v. Sletten, 29 Cal. 4th 82, 89 (2002) (emphasis supplied). To defeat a motion to strike, a cause of action need not be proven, but rather, must merely be "stated and substantiated." Rosenthal v. Great Western Fin. Securities Corp., 14 Cal. 4th 394, 411-12 (1996). Once a plaintiff (or as here, a counter-plaintiff) shows that "any part of its claim" has minimal merit, "plaintiff has established that its cause of action has some merit and the entire cause of action stands." Mann v. Quality Old Time Service, Inc., 2004 WL 1463039, *5 (Cal. App. 4 Dist. 2004).

Here, Defendants more than meet their burden of showing that their counterclaim has "minimal" merit. Moreover, Plaintiff's extraordinarily egregious pattern of litigation misuse, frivolous claims, and bad faith practices do not fall under the umbrella of "protected" speech or petitioning intended to be safeguarded by the statute. To the contrary, the anti-SLAPP statute was enacted in order to ***prevent precisely the type of suits*** brought by Monster Energy Company and complained of by Defendant in its counterclaim; in other words, those suits initiated by well-resourced companies in order, not to redress actual harm, but to silence or crush smaller competition. Thus, the very threshold requirement of Plaintiff's anti-SLAPP claim, namely, that its lawsuits arose from "protected activity," has not been met.

Further, the Ninth Circuit has held that filing a single baseless lawsuit can cause an anti-

- 13 -     Opposition to Motion to Strike

SLAPP movant to lose the First Amendment immunity upon which the statute is predicated. *See* Clipper Express v. Rocky Mountain Motor Tariff Bureau, Inc., 690 F.2d 1240 (9th Cir. 1982). Here, Defendants allege that Plaintiff has filed over one thousand baseless lawsuits, none of which were filed "in furtherance of its petition of free speech rights in connection with a public issue." Plaintiff filed its lawsuits in order to stifle and thwart competition, and to seize an unlawful monopoly over common dictionary words beyond what the Trademark Act allows. Accordingly, Plaintiff is not an appropriate anti-SLAPP complainant, and cannot appropriately strike Defendants' counterclaim under the anti-SLAPP statute. *See* Jarrow Formulas, Inc. v. LaMarche, 31 Cal.4th 728 (2003).

Similar to the anti-SLAPP statute's requirements, a litigant claiming immunity under the litigation privilege must show that the lawsuit for which it claims a privilege was made <u>to achieve the objects of the litigation</u>, and that it has <u>some connection or logical relation to the action</u>. West's Ann. Cal. Civ. Code § 47(b). Here, Plaintiff's lawsuits were not brought in order to achieve their stated purpose of redressing harm or injury to Plaintiff, nor is the actual purpose for which the suits were brought connected to any actual harm or injury to Plaintiff. Plaintiff has yet to prove, in any single case of which Defendants are aware, that it has been harmed by any of the small businesses it has attacked, nor by any defendants' use of the generic words "MONSTER" or "BEAST" in their own ventures. Indeed, Plaintiff's boasts regarding its size, fame, and profit undermine its claims that it could possibly be "irreparably harmed" by any of the micro-businesses and mom-and-pop shops it seeks to shutter. Certainly Plaintiff has not brought forth any facts whatsoever showing that Defendants in this case have, or could have, caused an iota of harm to Plaintiff, particularly as the contemporaneous TTAB case has already shown that no confusion or injury has taken place.

- 14 -    Opposition to Motion to Strike

If Plaintiff had brought this, and its other 1000+ lawsuits, for the genuine purpose of redressing trademark infringement, then Plaintiff would be shielded from claims of unfair competition based upon such filings. <u>But Plaintiff did not bring its lawsuits for such purpose</u>. Plaintiff's actual purpose, which was to use the court as a sword to strike down others engaging in lawful business activities, had no connection or logical relation to its stated causes of action, and is therefore not privileged. Applying privilege to Plaintiff's frivolous actions would effectively and improperly immunize conduct prohibited by the Lanham Act and by California Unfair Competition law. Oei v. N. Star Capital Acquisitions, LLC, 486 F.Supp.2d 1089 (2006).

### c. Defendants' Unclean Hands and Trademark Misuse Affirmative Defenses Are Properly Pled and are Not Barred by the *Noerr-Pennington* Doctrine

Affirmative defenses are found by the Ninth Circuit to be sufficiently pled if they provide the plaintiff with "fair and adequate notice." Wyshak v. City National Bank, 607 F.2d 824, 827 (9th Cir. 1979). Fair notice does not require that a party plead an affirmative defense with particular specificity. Wong v. U.S., 373 F.3d 952, 969 (9th Cir. 2004). Indeed, "Rule 8(b) and Rule 8(c) contain no language that pleaders must show that they are entitled to relief on their affirmative defenses." Memory Control Enter. LLC v. Edmunds.com, Inc., 2012 WL 681765, at *4 (C.D. Cal. 2012).

Generally, simply pleading the name of the affirmative defense is sufficient. United States v. Global Mortgage Funding, Inc., No. SA-CV-071275, 2008 WL 5264986, *2 (C.D. Cal. 2008); *see also* Verco Decking, Inc. v. Consol. Sys., Inc., No. CV-11-2516, 2013 WL 6844106, *5 (D. Ariz. 2013) ("[T]he only pleading requirement for an affirmative defense, as opposed to a defense or a claim, is that a party must affirmatively state it."); Federal Trade Commission v. Hope Now Modifications, LLC, No. 09-1204 (JBS/JS), 2011 WL 883202, *2 (D.N.J. 2011) (whereas Rule 8(a)(2) governing federal complaints requires a plaintiff to "show that the pleader

- 15 -  Opposition to Motion to Strike

*1* is entitled to relief," Rule 8(c)(1) governing defenses merely requires a defendant to "state any

*2* avoidance or affirmative defense"); Tyco Fire Products v. Victaulic Company, 777 F.Supp.2d

*3* 893 (E.D. Pa. 2011) ("An affirmative defense need not be plausible to survive; it must merely

*4* provide fair notice of the issue involved .... the requisite notice is provided where the affirmative

*5* defense in question alerts the adversary to the existence of the issue for trial. Providing

*6*

*7* knowledge that the issue exists, not precisely how the issue is implicated under the facts of a

*8* given case, is the purpose of requiring averments of affirmative defenses. Thus, the Court will

*9* only strike defenses challenged on sufficiency grounds if they do not meet this low standard.");

*10* Charleswell v. Chase Manhattan Bank, N.A., No. 01-119, 2009 WL 4981730, at *4 (D.V.I. Dec.

*11* 8, 2009) (there is no requirement in Rule 8(c) for a defendant to "show any facts at all").

*12*

*13* Here, Defendants do significantly more than affirmatively state their defenses.

Defendants are also explicit in setting forth the facts and grounds for such defenses. This is

*14*

*15* enough to withstand a motion to strike. *See* Gen-Probe Inc. v. Becton Dickinson and Co., 2010

*16* WL 4442731, *1 (S.D. Cal. 2010) ("Because BD has identified and affirmatively stated that it

*17* intends to assert an unclean hands defense, BD has met its pleading obligation under Rule

*18* 8(c)."); Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1023 (9th Cir. 2010).

*19*

*20* Even viewed independently, but certainly when viewed together, the various paragraphs

of Defendant's Answer and Counterclaims provide ample notice to Plaintiff under Rule 8(c).

*21*

*22* *See* Williams v. Ashland Eng'g Co., Inc., 45 F.3d 588, 593 (1st Cir. 1995) ("an inquiring court

*23* must examine the totality of the circumstances and make a practical, common sense assessment

*24* about whether Rule 8(c)'s core purpose - to act as a safeguard against surprise and unfair

*25* prejudice - has been vindicated"); AEL Financial, LLC v. Burns, 2010 WL 4313988, *2 (N.D.

*26* Ill. 2010) (read in its entirety, answer with list of conclusory affirmative defenses, along with

*27*

*28* - 16 -                                        Opposition to Motion to Strike

factual background, satisfied Rule 8(c)); Schlottman v. Unit Drilling Co., LLC, No. Civ-08-1275-C, 2009 WL 1764855, *1 (W.D. Okla. 2009) (the sufficiency of affirmative defenses must be compared and considered in the context of the pleadings as a whole).

Defendant has either met or exceeded its pleading obligation under Rule 8(c). Further, Plaintiff has not shown that it has been hampered by Defendants' pleading, nor has Plaintiff articulated any prejudice that would result from a denial of its Motion to Strike, even if Defendants' unclean hands and trademark misuse defenses eventually prove to be duplicative after factual investigation.[4] This failure, in itself, may be fatal to Plaintiff's claims. *See* 5 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE, § 1381 (4th ed. 2013-2017) ("even when technically appropriate and well-founded, Rule 12(f) motions often are not granted in the absence of a showing of prejudice to the moving party").

Plaintiff invokes the Noerr-Pennington doctrine, not to deny the merits or substance of Defendants' defenses, but to claim immunity from them. The Noerr-Pennington doctrine, which provides immunity for certain antitrust claims brought under the Sherman Act (which, incidentally, are not alleged in the instant action), protects **bona fide** efforts to obtain or influence legislative, executive, judicial or administrative actions.

If the purported effort to influence or obtain government action is in reality only an attempt to interfere with the business relationships of a competitor, however, the activity does not enjoy antitrust immunity. Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 144 (1961). Baseless protests, instituted without regard to merit, are "nothing more than an attempt to interfere directly with the business relationships of a

---

[4] Defendants will of course voluntarily withdraw any claim or defense that, after fact investigation, cannot be proven or pled in good faith. As of this date, each and every one of Defendants' claims and defenses is understood to be valid and supported by information and genuine belief.

- 17 - Opposition to Motion to Strike

competitor." *Noerr*, 365 U.S. at 144, 81 S.Ct. at 533. This is known as the sham exception. Allegations such as Defendants have made in this case, that a plaintiff has instituted proceedings without probable cause, and regardless of merit, state a cause of action which falls squarely within the sham exception to *Noerr-Pennington*. *See* California Transport v. Trucking Unlimited, 404 U.S. at 512-13 (1971) (a pattern of filing baseless, repetitive claims violates and abuses judicial processes and cannot acquire immunity by seeking refuge under the umbrella of "political expression").

In an analogous case to the present one, *Otter Tail Power Co. v. United States*, 410 U.S. 366 (1973), the repetitive use of litigation was designed principally to prevent third parties from entering the market, and thereby to preserve defendant's monopoly. In that case, the litigation was found to "come within the sham exception to the *Noerr* doctrine," and to therefore not be immune from challenge.

The facts here show that Plaintiff's conduct is not the type that is entitled to immunity. Plaintiff's lawsuits are spurious, baseless, and prosecuted without regard to their merit, intended only to suppress competitive action, and not to influence governmental action.

The sham exception reflects a judicial recognition that not all activity that appears to be *bona fide* litigation is actually an exercise of the first amendment right to petition. Sometimes, as is the case here, activity disguised as petitioning is, in reality, an effort to interfere directly with a competitor or to secure an unlawful monopoly. In this instance, Plaintiff's sham petitioning activity is not entitled to first amendment protection, because it is not an exercise of first amendment rights.

**VI.     CONCLUSION**

The Court should deny Plaintiff's Motion and allow the parties to vet Defendants'

- 18 -                                          Opposition to Motion to Strike

|   |   |
|---|---|
| *1* | counterclaim and affirmative defenses through discovery, dispositive motion practice, and, if |
| *2* | necessary, at trial. In the alternative, the Court should grant Defendant leave to amend any |
| *3* | counterclaims or affirmative defenses it deems deficient. |

Dated: September 28, 2018                          Respectfully submitted,

BARTON GILMAN LLP

By: _/s/_ Eve J. Brown_____
    Eve J. Brown

Attorney for Defendants

- 19 -                          Opposition to Motion to Strike