Steven J. Nataupsky (SBN 155913)
steven.nataupsky@knobbe.com
Lynda J. Zadra-Symes (SBN 156511)
lynda.zadrasymes@knobbe.com
Matthew S. Bellinger (SBN 222228)
matt.bellinger@knobbe.com
Marko R. Zoretic (SBN 233952)
marko.zoretic@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

Attorneys for Plaintiff
MONSTER ENERGY COMPANY

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONSTER ENERGY COMPANY, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>THUNDER BEAST LLC, a District of Columbia limited liability company, and<br><br>STEPHEN NORBERG, an individual,<br><br>Defendants. | Case No. 5:18-cv-01367-AB-AS<br><br>**PLAINTIFF MONSTER ENERGY COMPANY'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON DEFENDANTS' FAIR USE AFFIRMATIVE DEFENSE**<br><br>Date: August 30, 2018<br>Time: 10:00 a.m.<br>Ctrm: 7B<br><br>Hon. André Birotte Jr. |

**TABLE OF CONTENTS**

**Page No.**

I.   INTRODUCTION ................................................................................... 1

II.  FACTUAL BACKGROUND ................................................................ 2

III. LEGAL BACKGROUND ...................................................................... 4

    A.   Standard for Summary Judgment ................................................. 4

    B.   Fair Use ......................................................................................... 5

IV.  ARGUMENT .......................................................................................... 6

        1.   Defendants' Use of the FIGHT MONSTERS Mark is Not Classic Fair Use ........................................................ 7

        2.   Defendants' Use of the FIGHT MONSTERS Mark is Not Nominative Fair Use ............................................... 7

V.   CONCLUSION ..................................................................................... 11

# TABLE OF ATHORITIES

Page No(s).

*Align Technology, Inc. v. Strauss Diamond Instruments, Inc.*,
  No. 18-cv-06663-TSH, 2019 WL 1586776
  (N.D. Cal. Apr. 12, 2019) ........................................................................... 9

*AVCO Corporation v. Turn and Bank Holdings, LLC*,
  No. 4:12-cv-01313, 2018 WL 1706359 (M.D. Pa. Apr. 9, 2018) .............. 10

*Cairns v. Franklin Mint Co.*,
  292 F.3d 1139 (9th Cir. 2002) ............................................................ *passim*

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) .................................................................................... 5

*Simo v. Union of Needletrades, Indus. & Textile Employees*,
  322 F.3d 602 (9th Cir. 2003) ...................................................................... 4

*Virginia Polytechnic Inst. & State Univ. v. Hokie Real Estate, Inc.*,
  No. 7:10-cv-00466, 2011 WL 926862 (W.D. Va. Mar. 15, 2011) ............ 11

*Warner Bros. Entm't v. Glob. Asylum, Inc.*,
  CV12-9547-PSG, 2012 WL 6951315 (C.D. Cal. Dec. 10, 2012),
  *aff'd sub nom.*, 544 Fed. App'x 683 (9th Cir. 2013) .................................. 9

## OTHER AUTHORITIES

Fed. R. Civ. P. 56 .............................................................................................. 4

J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR
  COMPETITION § 4:17 (5th ed.) ................................................................... 6

Plaintiff Monster Energy Company ("Monster") submits this Memorandum of Points and Authorities in support of its Motion for Summary Judgment on Defendants Thunder Beast LLC's and Stephen Norberg's (collectively "Defendants") fair use affirmative defense.

## I. INTRODUCTION

In 2002, Monster launched its original MONSTER ENERGY® drink. Monster's now-famous MONSTER ENERGY® and UNLEASH THE BEAST!® marks are displayed on the product container. Monster has expanded its line of MONSTER™ drinks to include many other well-known products, the containers and packaging of which are prominently marked with the MONSTER™ mark and most of which are also marked with the UNLEASH THE BEAST!® mark or other BEAST-inclusive marks, such as REHAB THE BEAST!® and PUMP UP THE BEAST!®. Monster owns numerous U.S. trademark registrations for MONSTER and BEAST inclusive marks in connection with beverages.

In 2013, over a decade after Monster launched its MONSTER line of drinks bearing the UNLEASH THE BEAST!® mark, Defendants began selling beverages under the THUNDER BEAST mark. In 2016, Defendants added FIGHT MONSTERS to the labels of their THUNDER BEAST beverages. Defendants assert that they added the FIGHT MONSTERS mark as part of a campaign under which Defendants claim to donate 10% of their profits to causes that fight "monsters" in society. Defendants' FIGHT MONSTERS mark appears adjacent to the THUNDER BEAST mark on the label.

After Defendants added the FIGHT MONSTERS mark to their beverage labels, Monster filed this trademark infringement suit. Defendants initially raised six Affirmative Defenses in their Answer. All of those Affirmative Defenses were later stricken except one—Defendants' fair use defense. Defendants cannot prevail on that remaining defense as a matter of law.

There are two types of fair use—classic and nominative. Defendants cannot meet their burden of establishing classic fair use because their use of FIGHT MONSTERS does not describe Defendants' beverages. Nor can Defendants establish nominative fair use. Defendants concede that the FIGHT MONSTERS mark does not identify Monster or any of its products, and is not being used to compare Defendants' products with Monster's products.

There is no genuine dispute that Defendants cannot prevail on their fair use defense. Accordingly, Monster requests that the Court grant summary judgment in favor of Monster and against Defendants on that defense.

## II. FACTUAL BACKGROUND

In 2002, Monster launched its original MONSTER ENERGY® drink. ("Statement of Uncontroverted Facts and Conclusions of Law ("SUF") ¶ 1.) The drink container displays Monster's MONSTER ENERGY® and UNLEASH THE BEAST!® marks, as shown below:



(SUF ¶ 2.) After launching its original MONSTER ENERGY® drink in 2002, Monster expanded its MONSTER product line and began using additional marks containing the term BEAST in conjunction with its MONSTER ENERGY® and other MONSTER-inclusive marks. (SUF ¶ 3.) Monster is the owner of numerous U.S. trademark registrations for its BEAST-inclusive marks,

including UNLEASH THE BEAST!®, UNLEASH THE NITRO BEAST!®, REHAB THE BEAST!®, UNLEASH THE ULTRA BEAST!®, and PUMP UP THE BEAST!®, among others. (SUF ¶ 4.) Monster also owns numerous U.S. trademark registrations for its MONSTER marks. (SUF ¶ 5.) It is undisputed that Monster is the only company that owns U.S. registered trademarks that include the MONSTER mark for sodas. (SUF ¶ 6.)

Defendants sell beverages under the mark THUNDER BEAST. (SUF ¶ 7.) Defendants claim to have first sold beverages under the THUNDER BEAST mark in 2013. (SUF ¶ 8.) Monster initiated a cancellation proceeding in the U.S. Patent and Trademark Office in January 2016 seeking to cancel a trademark registration owed by Defendant Thunder Beast LLC for the THUNDER BEAST mark. (SUF ¶ 9.) After Monster filed that cancellation action, Defendants added FIGHT MONSTERS to the principal display panel of their beverages and to marketing materials for the products. (SUF ¶ 10.) An example of Defendants' beverage label is shown below:



(SUF ¶ 11.)

Defendants claim that FIGHT MONSTERS is used "as a call to action, so that Defendants could use its bottles as a platform to inspire others to overcome

whatever 'monster' they face in their own lives." (SUF ¶ 12.) Defendants purportedly use the FIGHT MONSTERS mark in connection with a program under which Defendants claim to donate 10% of their profits to causes that fight "monsters" in society. (SUF ¶ 13.) Stephen Norberg, Thunder Beast LLC's founder and only employee, claims that he chose the term "monster" because "the word 'monster' most effectively encapsulates a shared experience that most people have of facing something that is evil and it is big and scary and hard and is primarily based in fear." (SUF ¶¶ 14, 15.)

Monster filed the present lawsuit on June 26, 2018. (SUF ¶ 16.) Monster asserted claims for, *inter alia*, trademark infringement and unfair competition based on Defendants' infringing use of the THUNDER BEAST and FIGHT MONSTERS marks in connection with their beverages, which creates a likelihood of confusion with Monster's BEAST-inclusive and MONSTER marks. (SUF ¶ 17.) Defendants filed their First Amended Answer on August 20, 2018. (SUF ¶ 18.) Defendants asserted a "fair use" affirmative defense alleging that "[a]ny use by Defendants of trademarks owned by Plaintiff was fair use for comment and criticism, and not trademark use."[1] (SUF ¶ 19.)

### III. LEGAL BACKGROUND

**A.     Standard for Summary Judgment**

Summary judgment is appropriate where the record, read in the light most favorable to the nonmovant, indicates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Simo v. Union of Needletrades, Indus. & Textile Employees,* 322 F.3d 602, 609-10 (9th Cir. 2003). Where the non-moving party bears the burden of proof, "the burden on the moving party may be discharged

---

[1] Defendants have raised the fair use defense only with respect to their use of the FIGHT MONSTERS mark, and not with respect to the THUNDER BEAST mark. (SUF ¶ 20.)

by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

## B. <u>Fair Use</u>

Fair use falls into two catergories—classic and nominative. *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1150 (9th Cir. 2002). Classic fair use occurs where "the defendant has used the plaintiff's mark to describe the defendant's *own* product." *Id*. (internal quotation marks omitted) (emphasis in original). The Ninth Circuit has explained:

> A good example of classic fair use is *In re Dual–Deck Video Cassette Recorder Antitrust Litig.,* 11 F.3d 1460 (9th Cir. 1993). In that case, the plaintiff sold a videocassette recorder, which had two decks in one machine, under the trademark ''VCR–2.'' *See id.* at 1462. The defendant sold receivers and other machines to which two videocassette recorders could be attached and labeled the relevant terminals on the backs of its machines ''VCR–1'' and ''VCR–2.'' *See id.* Thus, the defendant used the mark ''VCR–2'' only to describe its own products, to which any second VCR could be attached, and not at all to describe the plaintiff's product or any other particular VCR. Accordingly, the classic fair use analysis was appropriate. We held that ''[t]he uses were descriptive, and there is no evidence from which an inference of bad faith could be drawn.'' *Id.* at 1467.

*Cairns*, 292 F.3d at 1151 n. 9. To establish classic fair use, Defendants must prove that (i) they do not use FIGHT MONSTERS as a trademark or service mark; (ii) they use FIGHT MONSTERS "fairly and in good faith"; and (iii) they use FIGHT MONSTERS "only to describe" Defendants' goods. *Id*. at 1151.

Nominative fair use occurs where the "defendant has used the plaintiff's mark to describe the *plaintiff's* product." *Id.* (internal quotation marks omitted) (emphasis in original). "Some examples of hypothetical uses that might qualify as a 'nominative fair use' are: comparative advertising (e.g., 'Our ZETA gizmos last longer than ALPHA gizmos.''); independent repair facilities (e.g., 'We

-5-

repair MERCEDES vehicles.'); independent retailers (e.g., 'We sell genuine GLUGMORE plumbing parts.')." 1 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 4:17 (5th ed.). To establish nominative fair use, Defendants must prove that they are using Monster's mark to refer to Monster and (i) Monster's products are not readily identifiable without using Monster's mark, (ii) Defendants have used only so much of the mark as is reasonably necessary to identify Monster's products, and (iii) Defendants have done nothing, in conjunction with their use of the mark, that would suggest sponsorship or endorsement by Monster. *Cairns*, 292 F.3d at 1151 (citing *New Kids on the Block v. New Am. Publ'g, Inc.*, 971 F.2d 302, 308 (9th Cir. 1992)).

"There is often a misunderstanding over the significance of the term 'fair use' in trademark law." 1 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 4:17 (5th ed.). "Sometimes the term 'fair use' is applied to all noninfringing uses of a mark, including those beyond [classic fair use and nominative fair use]. But this is not correct. 'Fair use' covers only a relatively small subset of noninfringing uses which fall into either of [classic fair use or nominative fair use]." *Id*.

## IV. <u>ARGUMENT</u>

Defendants bear the burden of proving their fair use defense. *Cairns*, 292 F.3d at 1151. No evidence supports that defense. The undisputed evidence shows that Defendants' use of FIGHT MONSTERS on their beverage labels and associated marketing materials fails to satisfy the requirements for either classic or nominative fair use. Accordingly, the Court should grant summary judgment against Defendants and in favor on Monster on the fair use defense.

/ / /

/ / /

/ / /

-6-

### 1. Defendants' Use of the FIGHT MONSTERS Mark is Not Classic Fair Use

There is no evidence that Defendants use the FIGHT MONSTERS mark in a descriptive sense to describe their own beverages, such as describing how the beverages taste. (SUF ¶ 21.) Rather, the undisputed evidence is that Defendants claim to use FIGHT MONSTERS "as a call to action, so that Defendants could use its bottles as a platform to inspire others to overcome whatever 'monster' they face in their own lives." (SUF ¶ 12.) Defendants are using FIGHT MONSTERS as a mark to attract consumers, as evidenced by its positioning with the primary mark THUNDER BEAST on Defendants' beverage containers, and the use of DRINK THUNDER adjacent to the FIGHT MONSTERS mark. (SUF ¶ 10.) Accordingly, Defendants' use of FIGHT MONSTERS cannot be classic fair use as a matter of law because Defendants do not use FIGHT MONSTERS to describe their own goods. *See Cairns*, 292 F.3d at 1150-51. Indeed, Defendants' pleading of the fair use affirmative defense does not even allege that Defendants use the term FIGHT MONSTERS to describe their own products. (SUF ¶ 22.)

### 2. Defendants' Use of the FIGHT MONSTERS Mark is Not Nominative Fair Use

Defendants admit that they do not use the FIGHT MONSTERS mark to identify Plaintiff Monster Energy or to idenfity any of Monster's products.[2]

---

[2] Defendants' response to Monster's interrogatory concerning the fair use affirmative defense states in part: "[t]o the extent that Defendants have referred to Plaintiff Monster Energy Company as an example or illustration of the type of "monster" Defendants strive to conquer, Defendants explicitly identify Monster Energy in order to report Defendants' negative experience with Plaintiff and to express a truthful and critical commentary on Plaintiff and do not imply affiliation or sponsorship…" (SUF ¶ 23.) But references by Defendants to the present dispute with Monster Energy is not the issue here. The issue here concerns Defendants' use of FIGHT MONSTERS in connection

(SUF ¶ 23.) Instead, Defendants claim to use FIGHT MONSTERS as a "call to action" rather than as a reference to Monster. (SUF ¶¶ 12, 23.) Defendants' marketing materials explain "what the Fight Monsters mission is all about":

# #FightMonsters

Thunder Beast makes very delicious root beer. We're not going to pretend like that's not part of this. But our **real mission** and true purpose is far greater than just crafting tasty drinks.

**Thunder Beast exists because we want to make our world a better place.**

While we are all about chasing dreams and living passionately, our primary objective is to take a stand against the monsters out there oppressing and destroying the good things in life.

Everyone has a monster that they must overcome. For some it's a bully at school or work. For others, it's dealing with sexual harassment or discrimination in everyday life. And for far, far too many that monster is human trafficking.

There are more monsters and injustices in this world than we can count, but we are taking a stand. We are going to take them on, face them down, and fight it out to the end!

Join Thunder Beast in our mission: **Drink Thunder. Fight Monsters!**

# We Donate 10%

Thunder Beast donates 10% of profits to causes that Fight Monsters, and we are always looking for new partnerships and future collaborations.

(SUF ¶ 24.) Indeed, Mr. Norberg testified that FIGHT MONSTERS is not intended to be a reference to Monster Energy:

---

with Defendants' beverages, which Defendants contend is not an explicit reference to Monster Energy.

-8-

> Q. So did you intend consumers to think of Monster Energy when they saw Fight Monsters on the label?
>
> A. **No. I did not want people to think about Monster Energy directly, which is why I didn't say Monster Energy or something similar**. I assumed that people would read my story and they would hear about my bullying and think it's unfair, but I would be happy if no one ever thinks of Monster Energy ever again in connection with me, and I would much rather them just see the monster in whatever connotation that word has in their mind from their life and past experience, which I think is just this kind of generic really evil scary being, that that is what would inspire them.

(SUF ¶ 25.) Defendants also admit that their use of the FIGHT MONSTERS mark does not serve to compare Defendants' products with any of Monster's products. (SUF ¶ 26.) For example, Mr. Norberg further testified:

> Q. Does the use of Fight Monsters on the product label serve to <u>compare</u> Thunder Beast products with any of Monster Energy's products?
>
> A. <u>No, I don't want to compare my products with Monster Energy</u>. I want to be as separate and different from Monster Energy as possible.

(*Id.*)

Thus, it is undisputed that Defendants are purporting to use FIGHT MONSTERS in a general sense to refer to all sorts of "monsters" that exist in the world. Defendants concede they are not using FIGHT MONSTERS to identify Monster Energy or its products, or to compare Defendants' products with Monster's products. (SUF ¶¶ 25, 26.) Consequently, Defendants' use of FIGHT MONSTERS cannot be nominative fair use. *See Cairns*, 292 F.3d at 1150-1151; *Warner Bros. Entm't v. Glob. Asylum, Inc.*, CV12-9547-PSG, 2012 WL 6951315, at *19 (C.D. Cal. Dec. 10, 2012), *aff'd sub nom.*, 544 Fed. App'x 683 (9th Cir. 2013); *Align Technology, Inc. v. Strauss Diamond Instruments, Inc.*, No. 18-cv-06663-TSH, 2019 WL 1586776, at *5-6 (N.D. Cal. Apr. 12,

2019) (defendant's use of plaintiff's marks did not qualify as nominative fair use because defendant used the marks to refer to its own products, not to refer to the plaintiff's product); *AVCO Corporation v. Turn and Bank Holdings*, LLC, No. 4:12-cv-01313, 2018 WL 1706359, at *10 (M.D. Pa. Apr. 9, 2018) (no nominative fair use where marks were used to label defendant's own product rather than to refer to the trademark owner's products).

Moreover, Defendants cannot show that they have done nothing, in conjunction with their use of FIGHT MONSTERS on beverage labels, that would suggest sponsorship or endorsement by Monster. *Cairns*, 292 F.3d at 1151 (noting that one element of nominative fair use is that the defendant has done nothing, in conjunction with its use of the plaintiff's mark, that would suggest sponsorship or endorsement by the plaintiff). On the contrary, Defendants' use of the FIGHT MONSTERS mark in connection with their beverages suggests sponsorship or endoresement by Monster.

Monster is the owner of numerous trademark registrations for its MONSTER and BEAST-inclusive marks, and is the only company that owns U.S. registered trademarks that incorporate the MONSTER mark for sodas. (SUF ¶¶ 4–6.) Defendants purposely chose, with full knowledge of Monster's trademark rights, to place a MONSTER-inclusive mark (FIGHT MONSTERS) front and center on their beverage labels. (SUF ¶ 10.) Defendants' use of a MONSTER-inclusive mark on their beverage container together with a BEAST-inclusive mark, which Monster has done since 2002 on its beverages, further suggests sponsorship or endorsement of Defendants' beverages by Monster. Monster has an extensive line of MONSTER drinks and Defendants' beverage is likely to be perceived as a further extension of Monster's line of beverages.

The addition of the letter "s" to "monster" in the FIGHT MONSTERS mark does not dispel a perceived sponsorship or endoresement of Defendants'

beverages by Monster. *See, e.g., Virginia Polytechnic Inst. & State Univ. v. Hokie Real Estate, Inc.*, No. 7:10-cv-00466, 2011 WL 926862, at *6 (W.D. Va. Mar. 15, 2011) ("[C]ourts have held that the singular and plural forms of the same word are essentially indistinguishable in the trademark context.") (internal quotation marks omitted). Nor does the inclusion of "fight" in the FIGHT MONSTERS mark negate a perceived sponsorship or endorsement. Monster uses its MONSTER mark in connection with marks such as PUNCH MONSTER® and MUSCLE MONSTER®. (SUF ¶¶ 5, 3.) Monster also sponsors the Ultimate Fighting Championship ("UFC") and sponsors UFC athletes. (SUF ¶ 27.) Thus, consumers are likely to believe that FIGHT MONSTERS is one of Monster's MONSTER family of marks. Accordingly, Defendants cannot meet their burden of showing they have done nothing to suggest sponsorship or endorsement by Monster.

## V. CONCLUSION

For the above reasons, Monster requests that the Court grant summary judgment in favor of Monster on Defendants' fair use defense.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: July 26, 2019      By: /s/ Marko R. Zoretic
                                      Steven J. Nataupsky
                                      Lynda J. Zadra-Symes
                                      Matthew S. Bellinger
                                        Marko R. Zoretic

Attorneys for Plaintiff,
MONSTER ENERGY COMPANY

30903809