Eve J. Brown (SBN 247051)
BARTON GILMAN LLP
10 Dorrance Street, Suite 800
Providence, Rhode Island 02903
(401) 273-7171
ebrown@bglaw.com

ATTORNEY FOR DEFENDANTS

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONSTER ENERGY COMPANY,<br><br>    Plaintiff,<br><br>vs.<br><br>THUNDER BEAST, LLC and STEPHEN NORBERG,<br><br>    Defendants. | Case No.: 5:18-cv-01367-AB-AS<br><br>**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANTS' FAIR USE DEFENSE**<br><br>Date: August 30, 2019<br>Time: 10:00 a.m.<br>Courtroom: 7B<br><br>Hon. André Birotte Jr. |

Defendants Thunder Beast, LLC and Stephen Norberg ("Defendants") hereby oppose Plaintiff's motion for summary judgment on Defendants' fair use defense.

## I. INTRODUCTION

Summary judgment is inappropriate where genuine issues of fact remain in dispute. Here, factual issues that lie at the core of Defendants' fair use defense remain either in dispute or unchallenged by Plaintiff. These facts include:

- Whether Defendants' use of "FIGHT MONSTERS" refers to Monster Energy Company in a manner protected by the nominative fair use doctrine;

- Whether Defendants' use of "MONSTERS" is necessary in order to identify Monster Energy Company;

- Whether Defendants have used a nominal enough portion of Plaintiff's marks to constitute fair use;

- Whether Defendants' use of "FIGHT MONSTERS" is noncommercial expressive speech;

- Whether Defendants use "FIGHT MONSTERS" in a trademark or source identifying manner; and

- Whether Defendants' have engaged in any action or speech in connection with its use of "FIGHT MONSTERS" that suggests sponsorship or endorsement by Monster Energy Company.

DEFENDANTS' OPPOSITION TO SUMMARY JUDGMENT ON FAIR USE DEFENSE  2

Defendants will set forth facts showing that the above questions are likely to be resolved in its favor. Because Defendants have set forth sufficient evidence to prove their fair use defense, Plaintiff is not entitled to summary judgment as a matter of law.

Further, Defendants' use of "FIGHT MONSTERS" is constitutionally protected expression under the First Amendment of the Constitution. Constitutional supremacy over the Lanham Act and public policy demand that Defendants' free speech right to critically comment upon Monster Energy Company's actions through its "FIGHT MONSTERS" call to action not be silenced.

## II.     FACTUAL BACKGROUND

Thunder Beast root beer was conceived by individual Defendant Stephen Norberg in his dormitory at Harvard University in the early 2000's. Thunder Beast was a healthy alternative to alcoholic beverages and a way for undergraduates to avoid the peer pressure of underage drinking. Ultimately, Mr. Norberg turned his root beer brewing hobby into a successful long-term entrepreneurial venture. He officially registered his entity Thunder Beast, LLC in 2013.

In 2016, after many years of successful operation, Thunder Beast faced an aggressive legal challenge by Plaintiff Monster Energy in the form of a trademark cancellation proceeding before the Trademark Trial and Appeal Board. *See*

Trademark Trial and Appeal Board Cancellation No. 92063037. Mr. Norberg, still a one-man operation, faced depositions, extensive document discovery, and two and half years of motion practice before submitting Thunder Beast's final trial brief in 2018.

During the course of that proceeding, word circulated about the "David and Goliath" battle taking place before the TTAB between Thunder Beast and Monster Energy Company. Numerous media articles were published about the case. *See* Exhibit A. Defendants began receiving messages from other small businesses who were also being sued by Monster Energy Company, including a children's book author, car part manufacturers, a softball bat company, a mobile pizza stand, and a chef promoting healthy living for kids, among others.

Defendants were dismayed to learn that Monster Energy had in fact filed over one thousand (1,000) trademark proceedings against small business owners, the vast majority of whom defaulted due to lack of resources to fight against such a behemoth foe.[1]

---

[1] Monster Energy has been named the 2012, 2013, 2014, 2015, 2016, 2017, and 2018 "Trademark Bully of the Year." *See* https://www.trademarkia.com/opposition/opposition-brand.aspx (last visited August 9, 2019); *see also* Leah Chan Grinvald, *Shaming Trademark Bullies*, 2011 WIS. L. REV. 625 (2011) (referring to Monster Energy as the epitome of a trademark bully); Sara Marie Andrzejewski, *Leave Little Guys Alone: Protecting Small Businesses from Overly Litigious Corporations and Trademark Infringement Suits,* 19 J. INTELL. PROP. L. 117 (2011-2012) (referencing Monster Energy as an example of an overly litigious

In a response to its own and others' experiences with Monster Energy Company, released new labels with the slogans, "*Are you afraid of Monsters, or are Monsters afraid of you?*" and "FIGHT MONSTERS." Defendants also added a section to its website detailing its legal battle with Monster Energy Company, and declaring that:

> *The next step is winning our lawsuit, but that's not all. Our end game is establishing legal precedents so that other victims can fight back, getting some of the laws changed to prevent trademark bullying, and to help establish a non-profit to resource and protect other small businesses.*

See <u>Exhibit B</u>.

Unfortunately, the TTAB was not Defendants' final battleground. After all trial briefs had been submitted, Monster Energy Company unleashed a new chess move; it filed a second lawsuit against Defendants, this time in the Central District of California. Monster Energy then motioned the TTAB to suspend judgment on the administrative proceeding, which the TTAB did as a matter of deference to the federal court. Through this strategic play, Monster Energy both avoided a

―――――――――――――――――

corporation); Jason Vogel & Jeremy A. Schachter, *How Ethics Rules Can Be Used to Address Trademark Bullying,* 103 TRADEMARK REP. 503 (2013) (stating that Monster Energy's trademark bullying served as the actual catalyst for Senator Patrick Leahy to include a trademark bullying study in the Trademark Technical and Conforming Amendment Act of 2010, which examined the negative impact of such behaviors on small businesses and on the overall U.S. economy).

DEFENDANTS' OPPOSITION TO SUMMARY JUDGMENT ON FAIR USE DEFENSE          5

damaging precedent and launched a new battle, designed to strongarm Defendants and bleed them dry until they surrendered.

Here, Plaintiff underestimated the stamina and conviction of Defendants.

This summary judgment motion on a single affirmative defense is simply the latest tactic in a consistent litigation strategy employed by Monster Energy Company to exhaust Defendants' resources of Defendants with motion practice and procedural delays before a trial can be held.[2] Plaintiff's motion is full of out-of-context quotes and mischaracterizations, ignores the actual elements of proving nominative fair use, and is devoid of merit. As such, and for the further reasons set forth below, Plaintiff's motion must be denied.

## II. LEGAL STANDARD

Summary judgment is only appropriate where there are no genuine issues of material fact in dispute and when the movant is entitled to judgment as a matter of

---

[2] Defendants made a good faith (but ultimately unsuccessful) attempt to stave off this tactic by voluntarily stipulating to withdraw five out of its six original affirmative defenses. These five defenses were not stricken by the Court for lack of merit or support, as suggested by Plaintiff's brief. Defendants made the voluntary stipulation because it determined that those five defenses could be withdrawn without severe negative impact to Defendants' overall ability to defend this action, and because, on balance, avoiding summary judgment practice would be more beneficial than litigating those particular claims. Defendants could not, however, agree to withdraw its fair use defense as applied to Defendants' non-trademark use of the call to action, "FIGHT MONSTERS."

DEFENDANTS' OPPOSITION TO SUMMARY JUDGMENT ON FAIR USE DEFENSE 6

law. *See* Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the burden of meeting this high standard. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

In applying this standard, the evidence, and all reasonable factual inferences drawn therefrom, must be viewed in the light most favorable to the non-moving party. Lloyd's Food Prods. Inc. v. Eli's Inc., 987 F.2d 766, 767, 25 U.S.P.Q.2d 2027, 2029 (Fed. Cir. 1993); Olde Tyme Foods, Inc. v. Roundy's, Inc., 961 F.2d 200, 202, 22 U.S.P.Q.2d 1542 (Fed. Cir. 1992) ("the law requires that all reasonable inferences be drawn in favor of the nonmovant"); Opryland USA Inc. v. Great American Music Show, Inc., 970 F.2d 847, 850, 23 U.S.P.Q.2d 1471 (Fed. Cir. 1992) ("the evidence submitted by the non-movant, in opposition to a motion for summary judgment, is to be believed, and all justifiable inferences are to be drawn in [its] favor."). *See also* United States Steel Corp. v. Vasco Metals Corp., 394 F.2d 1009, 157 U.S.P.Q. 627 (C.C.P.A. 1968) (summary judgment should be cautiously used so as not to deprive a party of the right to have the case decided on the evidence presented during the trial period).

Federal courts, including those in the Ninth Circuit, have a long history of disfavoring summary judgment in trademark cases in particular, <u>including on the issue of fair use</u>. Worldwide Church of God v. Phila. Church of God, Inc., 227 F.3d 1110, 1115 (9th Cir. 2000) (summary judgment on the issue of fair use in a

trademark case is proper only where "even after resolving all issues in favor of the opposing party, a reasonable trier of fact can reach only one conclusion"); Leadsinger, Inc. v. BMG Music Pub. 512 F.3d 522, 530 (9th Cir. 2008) ("Fair use is a mixed question of law and fact," and a court can resolve the issue of fair use on a motion for summary judgment only when there are no genuine issues of material fact, or if, after resolving all issues in favor of the opposing party, a reasonable trier of fact can reach only one conclusion."); Electronic Arts, Inc. v. Textron Inc., 103 U.S.P.Q.2d 1984, 2012 WL 3042668 (N.D. Cal. 2012) (nominative fair use involves issues that cannot be addressed on a motion to dismiss); Hustler Magazine Inc. v. Moral Majority Inc. 796 F.2d 1148, 1151 (9th Cir. 1986).

### III.   ARGUMENT

1.   <u>Genuine Issues of Material Fact Remain in Dispute with Respect to Defendants' Fair Use Defense that Preclude Summary Judgment</u>

Defendants' fair use defense focuses on the nominative use of "FIGHT MONSTERS" in a non-confusing manner to comment upon and criticize Monster Energy's actions. If Defendants' use of "Monsters" in this manner is considered nominative fair use, then it is, by definition, non-infringing. *See* Toyota Motor Sales, U.S.A., Inc. v. Tabari, 610 F.3d 1171, 1175 (9th Cir. 2010) ("A "nominative fair use . . . is, by definition, not infringement."); New Kids on the Block v. News America Pub., Inc., 971 F.2d 302 (9th Cir. 1992) (a nominative fair use is "when a

mark is used in a manner that does not cause confusion and is therefore non-infringing. . . . . such use is fair because it does not imply sponsorship or endorsement by the trademark holder."); McCarthy on Trademarks and Unfair Competition § 23:11 (5th edition) ("where the unauthorized use does not falsely imply sponsorship or endorsement, the trademark owner cannot prevent the use"). Whether or not Defendants' use is protected under this doctrine is a critical question that goes to the heart of the parties' claims and defenses. It cannot be properly disposed of without a factual investigation.[3]

In order to establish nominative fair use, Defendants must show that: (1) the use of the senior trademark was necessary in order to identify Monster Energy Company; (2) that only so much of Plaintiff's asserted marks were used as was reasonably necessary; and (3) that Defendants did nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by Monster Energy Company. *New Kids*, 971 F.2d at 308.

---

[3] With its motion, Plaintiff submitted a list of allegedly "Undisputed Facts." Many of these facts have nothing whatsoever to do with the question of nominative fair use. For example, Plaintiff curiously asserts as Fact #27 that "Monster [Energy Company] sponsors the Ultimate Fighting Championship and UFC athletes." Plaintiff's Statement of Undisputed Facts at 7. Plaintiff's sponsorship of UFC athletes may indeed be true, as may be an infinite number of other irrelevant tidbits. Those peripheral and unrelated statements are not worth contravening here, as they do not address the relevant fair use factors nor eliminate the genuine factual dispute that exists.

Defendants can show all of the above. The fact that Plaintiff argues otherwise, or does not address the issues at all, indicates that genuine disputes remain.

First, Defendants can show that the use of "MONSTERS" in "FIGHT MONSTERS" was necessary to reference the Thunder Beast vs. Monster Energy lawsuit. As Mr. Norberg testifies in his Declaration and deposition transcript, "FIGHT MONSTERS" was a rallying cry to unite and inspire similarly situated defendants being sued by Monster Energy Company, as well as to empower others facing seemingly insurmountable challenges.

Mr. Norberg has testified that, after becoming widely recognized in the media and across the country as the "little guy" battling Monster Energy Company, he chose to publicly speak out against Monster Energy Company's actions, and to inspire others involved in similar battles to fight their own "monsters." His ability to be heard on such a grand scale was largely due to his recognizability as the opponent of Monster Energy Company, and the content of his message has always been directly related to Monster Energy's actions. *See* Defendant's website, attached as Exhibit B, and relevant testimony excerpts, Exhibit C. In this way, the use of "MONSTERS" is necessary to convey and express Defendants' meaning.

When Defendants' "FIGHT MONSTERS" campaign was launched, public reception was overwhelmingly positive. Defendants soon realized that they had the

opportunity to make an even greater societal impact. Ultimately, "FIGHT MONSTERS" became a broader campaign against bullying and injustice in all forms. Defendants began donating 10% of its profits to causes that fight such injustices, and to promote a larger campaign of standing up to all forms of Monsters, both literal (such as Plaintiff Monster Energy Company) and figurative.[4]

The second factor in proving nominative fair use is that only the portions of Plaintiff's marks that are necessary were referenced or "named" by Defendants. Here, Defendants only used the word "monster," without any of the numerous other portions of Defendants' marks (for example, "ENERGY," "NITRO," "ULTRA," "REHAB," or any of the claw designs, color combinations, or other markings used by Plaintiff as source identifiers). Defendants used only that nominal portion of Plaintiff's marks sufficient to signal to the public that Defendants' campaign was against Monster Energy Company, and that Defendants were in a position to lead that campaign due to their experiences in their very public lawsuits with Monster Energy Company.

---

[4] Defendants are unaware of any case law, and Plaintiff has not pointed to any, that requires the "naming" of a trademark owner to be exclusive in order for nominative fair use to be established. In other words, that "FIGHT MONSTERS" refers both to Monster Energy specifically and to the broader universe of monsters and other bullies generally should not preclude a finding a nominative fair use.

Finally, Defendants can easily demonstrate that they did nothing that would, in conjunction with the use of "FIGHT MONSTERS," suggest sponsorship or endorsement by Monster Energy Company. Quite the opposite is obviously true. By using the word "FIGHT" in front of "MONSTERS," Defendants place themselves in a directly oppositional stance to Plaintiff. Further, through the comprehensive narrative surrounding and supporting the use of "FIGHT MONSTERS" on Defendants' website and in Defendants' public-facing statements, interviews, and testimony, in which Defendants' strongly criticize Monster Energy Company, Defendants clearly distinguish and separate themselves from Monster Energy Company. No consumer reading Defendants' story or following Defendants' use of "FIGHT MONSTERS" would reasonably infer sponsorship, affiliation, or connection between Thunder Beast and Monster Energy Company other than a relationship of ardent adversity.

Plaintiff has not contravened any of the above points.[5] As such, the defense of fair use must remain available to Defendants at trial, where a reasonable jury may certainly find in Defendants' favor.

---

[5] To the contrary, Plaintiff's arguments are confusing, inconsistent, and at times tend to actually support Defendants. For example, Plaintiff argues that Defendants' use of "MONSTERS" <u>does not refer to Monster Energy Company at all</u>. It is difficult to reconcile this position with Plaintiff's other argument that Defendants' use of "FIGHT MONSTERS" implies a connection

DEFENDANTS' OPPOSITION TO SUMMARY JUDGMENT ON FAIR USE DEFENSE    12

## 2. Plaintiff is Not Entitled to Summary Judgment in its Favor as a Matter of Law and Public Policy

Because Defendants have set forth sufficient evidence to prove their fair use defense, Plaintiff is not entitled to judgment as a matter of law. Moreover, public policy and constitutional supremacy demand that this issue not be summarily decided.

"FIGHT MONSTERS" is a comment on a matter of serious public interest and concern, and a criticism of the actions taken by Monster Energy Company and others like them. As such, "FIGHT MONSTERS" is a fundamentally fair use, protected by the First Amendment of the Constitution.

This type of nominative fair use, designed to convey a message of public interest and concern, has a long history of protection under the First Amendment. Indeed, Defendants' right to free speech in this context necessarily takes precedence in the balancing between trademark rights and the First Amendment. *See* McCarthy on Trademarks and Unfair Competition § 31:139 (5th edition) (discussing the balancing of trademark enforcement with free speech principles); William McGeveran, *Rethinking Trademark Fair Use,* 94 IOWA L. REV. 49, 98

---

or affiliation with Monster Energy Company to such a strong extent that confusion is likely to occur.

(2008) (referring to the "First Amendment defense" for "expressive uses" of trademarks); Rogers v. Grimaldi, 875 F.2d 994, 997-1000 (2d Cir. 1989) (analyzing First Amendment's application to Lanham Act disputes when unauthorized use of trademark contains protected expression); Brach Van Houten Holding, Inc. v. Save Brach's Coal. for Chi., 856 F. Supp. 472, 476 (N.D. Ill. 1994) (explaining First Amendment's relevance to Lanham Act disputes when unauthorized use of trademark contains communicative messages).

Using another's mark in order to critically comment upon or show opposition to the trademark owner, rather than in a manner to cause confusion or suggest sponsorship, is at the core of the legal doctrine of fair use.

Here, the evidence, exhibits and Defendants' declaration show that:

- This lawsuit, and specifically Defendants' one-man battle against Plaintiff, a mega-corporation, has sparked widespread public interest;

- The purpose of the "FIGHT MONSTERS" slogan is noncommercial, and is designed to communicate a message of public concern; that is, that bullying and abusive practices will not be tolerated and can be overcome even by the "little guy";

- The use of "FIGHT MONSTERS" is clearly oppositional to Monster Energy Company, and not used in a comparative or confusing manner to suggest any type of association, sponsorship, or endorsement; and

- The use of "FIGHT MONSTERS" is protectable First Amendment speech used to criticize and comment upon actions that Plaintiff has undertaken, and that Defendants believe are abusive, unethical, and unjust.

By silencing Defendants on summary judgment, this Court runs the risk of constraining constitutionally protected expression in favor of statutory commercial rights. Such a result would be improper as a matter of both law and policy.

## IV.   CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court DENY Plaintiff's motion for summary judgment.

Dated: August 9, 2019                    BARTON GILMAN, LLP

By:   /Eve J. Brown/
10 Dorrance Street, Suite 800
Providence, RI 02903
(401) 273-7171
ebrown@bglaw.com