BARTON GILMAN LLP
Eve J. Brown, Esq. (SBN 247051)
Email: ebrown@bglaw.com
10 Dorrance Street, Suite 800
Providence, Rhode Island 02903
Telephone: (401) 273-7171

BURKHALTER KESSLER CLEMENT & GEORGE LLP
Daniel J. Kessler, Esq. (SBN 173710)
Email: dkessler@bkcglaw.com
Amanda V. Dwight, Esq. (SBN 187028)
Email: adwight@bkcglaw.com
2020 Main Street, Suite 600
Irvine, California 92614
Telephone: (949) 975-7500
Facsimile: (949) 975-7501

ATTORNEY FOR DEFENDANTS

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONSTER ENERGY COMPANY, a Delaware corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>THUNDER BEAST LLC, a District of Columbia limited liability company, and STEPHEN NORBERG, an individual,<br><br>Defendants. | Case No. 5:18-cv-01367-AB-AS<br><br>Assigned to Honorable André Birotte Jr.<br><br>**DEFENDANTS' CORRECTED MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANTS' FAIR USE DEFENSE**<br><br>Date: August 30, 2019<br>Time: 10:00 a.m.<br>Courtroom: 7B<br><br>Complaint Filed: June 26, 2018<br>Trial Date: January 28, 2020 |

# **TABLE OF CONTENTS**

**Page**

I. FACTUAL BACKGROUND ............................................................................... 1

II. LEGAL STANDARD ......................................................................................... 3

III. ARGUMENT ....................................................................................................... 6

    1. Genuine Issues of Material Fact Remain in Dispute with Respect to Defendants' Fair Use Defense that Preclude Summary Judgment ................................. 6

    2. Plaintiff is Not Entitled to Summary Judgment in its Favor as a Matter of Law and Public Policy ........................................................................ 9

IV. CONCLUSION ................................................................................................. 10

# TABLE OF AUTHORITIES

Page

**Federal Cases**

*Adickes v. S.H. Kress & Co.*
  398 U.S. 144, 157 (1970) .................................................................................. 3

*Brach Van Houten Holding, Inc. v. Save Brach's Coal. for Chi.*
  856 F. Supp. 472, 476 (N.D. Ill. 1994) ........................................................... 10

*Car-Freshner Corp. v. Auto Aid Mfg. Corp.*
  461 F. Supp. 1055, 201 U.S.P.Q. 233 (N.D.N.Y. 1979) .................................. 5

*Downing v. Abercrombie & Fitch*
  265 F.3d 994, 1008 (9th Cir. 2001) .................................................................. 5

*Electronic Arts, Inc. v. Textron Inc.*
  103 U.S.P.Q.2d 1984, 2012 WL 3042668 (N.D. Cal. 2012) ........................... 4

*Hustler Magazine Inc. v. Moral Majority Inc.*
  796 F.2d 1148, 1151 (9th Cir. 1986) ................................................................ 5

*In Union National Bank of Texas, Laredo, Texas v. Union National Bank
  of Texas, Austin, Texas*
  909 F.2d 839, 845 (5th Cir. 1990) .................................................................... 5

*Leadsinger, Inc. v. BMG Music Pub.*
  512 F.3d 522, 530 (9th Cir. 2008) .................................................................... 4

*Lloyd's Food Prods. Inc. v. Eli's Inc.*
  987 F.2d 766, 767, 25 U.S.P.Q.2d 2027, 2029 (Fed. Cir. 1993) ..................... 4

*National Color Laboratories, Inc. v. Philip's Foto Co.*
  273 F. Supp. 1002, 1004, 157 U.S.P.Q. 136 (S.D.N.Y. 1967) ......................... 5

*New Kids on the Block v. News America Pub., Inc.*
  971 F.2d 302 (9th Cir. 1992) ........................................................................ 6, 7

*Olde Tyme Foods, Inc. v. Roundy's, Inc.*
   961 F.2d 200, 202, 22 U.S.P.Q.2d 1542 (Fed. Cir. 1992) .................................. 4

*Opryland USA Inc. v. Great American Music Show, Inc.*
   970 F.2d 847, 850, 23 U.S.P.Q.2d 1471 (Fed. Cir. 1992) .................................. 4

*Rogers v. Grimaldi*
   875 F.2d 994, 997-1000 (2d Cir. 1989) ............................................................. 9

*Toyota Motor Sales, U.S.A., Inc. v. Tabari*
   610 F.3d 1171, 1175 (9th Cir. 2010) ................................................................. 6

*United States Steel Corp. v. Vasco Metals Corp.*
   394 F.2d 1009, 157 U.S.P.Q. 627 (C.C.P.A. 1968) .......................................... 4

*Worldwide Church of God v. Phila. Church of God, Inc.*
   227 F.3d 1110, 1115 (9th Cir. 2000) ................................................................. 4

**Statutes**

Fed.R.Civ.P. 56(c) .................................................................................................. 3

**Journals**

Jason Vogel & Jeremy A. Schachter, *How Ethics Rules Can Be Used to Address Trademark Bullying,* 103 TRADEMARK REP. 503 (2013) ................................ 2

Leah Chan Grinvald, *Shaming Trademark Bullies*, 2011 WIS. L. REV. 625 (2011) ................................................................................................................ 2

Sara Marie Andrzejewski, *Leave Little Guys Alone: Protecting Small Businesses from Overly Litigious Corporations and Trademark Infringement Suits,* 19 J. INTELL. PROP. L. 117 (2011-2012) ........................................... 2

William McGeveran, *Rethinking Trademark Fair Use,* 94 IOWA L. REV. 49, 98 (2008) ................................................................................................... 9

**Other Authorities**

TRADEMARKIA www.trademarkia.com. (2019). Biggest Bullies.
  [online]. Available at:
  https://www.trademarkia.com/opposition/opposition-brand.aspx ............................... 2

Trademarks and Unfair Competition § 23:11 (5th edition) ................................................ 6

Trademarks and Unfair Competition § 31:139 (5th edition) ............................................ 9

Defendants Thunder Beast, LLC and Stephen Norberg ("Defendants") hereby oppose Plaintiff's motion for summary judgment on Defendants' fair use defense.

## I.     FACTUAL BACKGROUND

Thunder Beast root beer was conceived by individual Defendant Stephen Norberg in his dormitory at Harvard University in the early 2000's. Ultimately, Mr. Norberg turned his root beer brewing hobby into a successful long-term entrepreneurial venture. He officially registered his entity Thunder Beast, LLC in 2013. Thunder Beast, LLC remains a one-man business owned and operated by Stephen Norberg.

In 2016, after many years of successful operation, Thunder Beast faced a legal challenge by Plaintiff Monster Energy Company in the form of a trademark cancellation proceeding before the Trademark Trial and Appeal Board. The parties engaged in depositions, extensive document discovery, and two and half years of motion practice before submitting their final trial briefs in 2018.

During the course of that proceeding, word circulated about the "David and Goliath" battle taking place before the TTAB between Thunder Beast and Monster Energy Company. Numerous media articles were published about the case. See Exhibit A. Defendants began receiving messages from other small businesses who were also being sued by Monster Energy Company, including a children's book author, car part manufacturers, a softball bat company, a mobile pizza stand, and a chef promoting healthy living for kids, among others.

Defendants were dismayed to learn that Monster Energy Company had in fact filed over one thousand (1,000) trademark proceedings against small business owners, the vast majority of whom were the victims of Monster Energy Company's

notorious intimidation tactics, and most of whom defaulted due to lack of resources to fight against such a behemoth foe.[1]

In response to their own and others' experiences with Monster Energy Company, Defendants launched a media campaign to bring Monster Energy Company's actions into the public eye. As part of this movement, Defendants released new labels with the slogans, "*Are you afraid of Monsters, or are Monsters afraid of you?*" and "FIGHT MONSTERS." Defendants also added a section to their Thunder Beast website detailing their legal battle with Monster Energy Company, and declaring that:

> *The next step is winning our lawsuit, but that's not all. Our end game is establishing legal precedents so that other victims can fight back, getting some of the laws changed to prevent trademark bullying, and to help establish a non-profit to resource and protect other small businesses.*

See Exhibit B.

Unfortunately, the TTAB was not the parties' final battleground. After all trial briefs had been submitted, Monster Energy Company unleashed a new chess move; it filed a brand-new lawsuit against Defendants, this time in the Central District of

---

[1] Monster Energy Company has been named the 2012, 2013, 2014, 2015, 2016, 2017, and 2018 "Trademark Bully of the Year." *See* https://www.trademarkia.com/opposition/opposition-brand.aspx (last visited August 9, 2019); *see also* Leah Chan Grinvald, *Shaming Trademark Bullies*, 2011 WIS. L. REV. 625 (2011) (referring to Monster Energy Company as the epitome of a trademark bully); Sara Marie Andrzejewski, *Leave Little Guys Alone: Protecting Small Businesses from Overly Litigious Corporations and Trademark Infringement Suits,* 19 J. INTELL. PROP. L. 117 (2011-2012) (referencing Monster Energy Company as an example of an overly litigious corporation); Jason Vogel & Jeremy A. Schachter, *How Ethics Rules Can Be Used to Address Trademark Bullying,* 103 TRADEMARK REP. 503 (2013) (stating that Monster Energy Company's trademark bullying served as the actual catalyst for Senator Patrick Leahy to include a trademark bullying study in the Trademark Technical and Conforming Amendment Act of 2010, which examined the negative impact of such behaviors on small businesses and on the overall U.S. economy).

California. Monster Energy Company then motioned the TTAB to suspend judgment on the administrative proceeding, which the TTAB did as a matter of deference to the federal court. Through this strategic play, Monster Energy Company both avoided a damaging precedent and launched a second battle, designed to strongarm Defendants and bleed them dry until they surrendered.

Here, Plaintiff underestimated the stamina and conviction of Defendants. This summary judgment motion on a single affirmative defense is the latest tactic in a consistent multi-year litigation strategy employed by Monster Energy Company to exhaust the resources of Defendants with extraneous motion practice and procedural delays before a trial can be held.[2] Plaintiff's motion is unsupported, full of out-of-context quotes and mischaracterizations, and devoid of merit. As such, and for the further reasons set forth below, Plaintiff's motion must be denied.

## II.   LEGAL STANDARD

Summary judgment is only appropriate where there are no genuine issues of material fact in dispute and when the movant is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of meeting this high standard. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

---

[2] Defendants made a good faith attempt to stave off this tactic by voluntarily stipulating to withdraw five out of their six original affirmative defenses. These five defenses were not stricken by the Court for lack of merit or support, as suggested by Plaintiff's brief. Defendants made the voluntary stipulation because they determined that those five defenses could be withdrawn without severe negative impact to Defendants' overall ability to defend this action, and because, on balance, avoiding summary judgment practice would be more beneficial than litigating those particular claims. Defendants could not, however, agree to withdraw their fair use defense as applied to their non-trademark use of "FIGHT MONSTERS."

In applying this standard, the evidence, and all reasonable factual inferences drawn therefrom, must be viewed in the light most favorable to the non-moving party. *Lloyd's Food Prods. Inc. v. Eli's Inc.*, 987 F.2d 766, 767, 25 U.S.P.Q.2d 2027, 2029 (Fed. Cir. 1993); *Olde Tyme Foods, Inc. v. Roundy's, Inc.*, 961 F.2d 200, 202, 22 U.S.P.Q.2d 1542 (Fed. Cir. 1992) ("the law requires that all reasonable inferences be drawn in favor of the nonmovant"); *Opryland USA Inc. v. Great American Music Show, Inc.*, 970 F.2d 847, 850, 23 U.S.P.Q.2d 1471 (Fed. Cir. 1992) ("the evidence submitted by the non-movant, in opposition to a motion for summary judgment, is to be believed, and all justifiable inferences are to be drawn in [its] favor."). *See also United States Steel Corp. v. Vasco Metals Corp.*, 394 F.2d 1009, 157 U.S.P.Q. 627 (C.C.P.A. 1968) (summary judgment should be cautiously used so as not to deprive a party of the right to have the case decided on the evidence presented during the trial period).

It is well established that trademark infringement cases in particular are not conducive to resolution at the summary judgment stage due to the highly fact-specific nature of the analysis. Federal courts, including those in the Ninth Circuit, have a long history of disfavoring summary judgment in these cases because the ultimate issues, including the issue of fair use, are so inherently factual and not self-evident. *Worldwide Church of God v. Phila. Church of God, Inc.*, 227 F.3d 1110, 1115 (9th Cir. 2000) (summary judgment on the issue of fair use in a trademark case is proper only where "even after resolving all issues in favor of the opposing party, a reasonable trier of fact can reach only one conclusion"); *Leadsinger, Inc. v. BMG Music Pub.* 512 F.3d 522, 530 (9th Cir. 2008) ("Fair use is a mixed question of law and fact," and a court can resolve the issue of fair use on a motion for summary judgment only when there are no genuine issues of material fact, or if, after resolving all issues in favor of the opposing party, a reasonable trier of fact can reach only one conclusion."); *Electronic Arts, Inc. v. Textron Inc.*, 103 U.S.P.Q.2d 1984, 2012 WL 3042668 (N.D. Cal. 2012) (nominative

fair use involves issues that cannot be addressed on a motion to dismiss); *Hustler Magazine Inc. v. Moral Majority Inc.* 796 F.2d 1148, 1151 (9th Cir. 1986); *In Union National Bank of Texas, Laredo, Texas v. Union National Bank of Texas, Austin, Texas*, 909 F.2d 839, 845 (5th Cir. 1990) ("We do not think that the trademark law is so clear that the interests it is meant to protect will be served in most cases without a thorough presentation of the evidence on all of the issues."); *Car-Freshner Corp. v. Auto Aid Mfg. Corp.*, 461 F. Supp. 1055, 201 U.S.P.Q. 233 (N.D.N.Y. 1979) (claims and defenses in trademark cases should not be resolved on summary judgment "absent the most extraordinary circumstances"); *National Color Laboratories, Inc. v. Philip's Foto Co.*, 273 F. Supp. 1002, 1004, 157 U.S.P.Q. 136 (S.D.N.Y. 1967) (in trademark and unfair competition cases, the Court must "consider various factors . . . . By their very nature some of these factors are so hazy and grayish in nature that a summary judgment cannot be granted merely upon perusal of affidavits, except in those rare instances where the facts are so black and white in nature that it can be stated unequivocally that there is no genuine issue as to any material fact and no issues to be resolved at a trial.").

The question of whether Defendants' use of "FIGHT MONSTERS" constitutes fair use issue is not unequivocal, nor "black and white." No "extraordinary circumstances" exist that could justify a decision without any factual examination. The direct and circumstantial evidence submitted by Defendants, as well as the inferences to be drawn from that evidence, clearly demonstrate that there are disputed material facts pertaining to Defendants' fair use defense. Thus, summary judgment is inappropriate at this stage. *See Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1008 (9th Cir. 2001) (summary judgment inappropriate in trademark infringement case hinging on factual question).

5

### III. ARGUMENT

#### 1. Genuine Issues of Material Fact Remain in Dispute with Respect to Defendants' Fair Use Defense that Preclude Summary Judgment

Defendants' fair use defense focuses on the nominative use of "FIGHT MONSTERS" in a non-confusing manner to comment upon and criticize Monster Energy Company's actions. If Defendants' use of "Monsters" in this manner is considered nominative fair use, then it is, by definition, non-infringing. *See Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1175 (9th Cir. 2010) ("A "nominative fair use . . . is, by definition, not infringement."); *New Kids on the Block v. News America Pub., Inc.*, 971 F.2d 302 (9th Cir. 1992) (a nominative fair use is "when a mark is used in a manner that does not cause confusion and is therefore non-infringing. . . . such use is fair because it does not imply sponsorship or endorsement by the trademark holder."); McCarthy on Trademarks and Unfair Competition § 23:11 (5th edition) ("where the unauthorized use does not falsely imply sponsorship or endorsement, the trademark owner cannot prevent the use"). Whether or not Defendants' use is protected under this doctrine is a critical question that goes to the heart of the parties' claims and defenses. It cannot be properly disposed of without a factual investigation.[3]

In order to establish nominative fair use, Defendants must show that: (1) the use of the senior trademark was necessary in order to identify Monster Energy Company; (2) that only so much of Plaintiff's asserted marks were used as was

---

[3] With its motion, Plaintiff submitted a list of allegedly "Undisputed Facts." Many of these facts have nothing whatsoever to do with the question of nominative fair use. For example, Plaintiff curiously asserts as Fact #27 that "Monster [Energy Company] sponsors the Ultimate Fighting Championship and UFC athletes." Plaintiff's Statement of Undisputed Facts at 7. Plaintiff's sponsorship of UFC athletes may indeed be true, as may be an infinite number of other irrelevant tidbits. Those peripheral and unrelated statements are not worth contravening here, as they do not address the relevant fair use factors nor eliminate the genuine factual dispute that exists. For the record, Thunder Beast has nothing to do with the UFC.

reasonably necessary; and (3) that Defendants did nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by Monster Energy Company. *New Kids*, 971 F.2d at 308.

Defendants can show all of the above. The fact that Plaintiff argues otherwise, or does not address the issues at all, indicates that genuine disputes remain.

First, Defendants can show that the use of "MONSTERS" in "FIGHT MONSTERS" was necessary to reference the Thunder Beast vs. Monster Energy Company lawsuit. As Mr. Norberg testifies in his Declaration and deposition transcript, "FIGHT MONSTERS" was a rallying cry to unite and inspire similarly situated defendants being sued by Monster Energy Company, as well as to empower others facing seemingly insurmountable challenges.

Mr. Norberg has testified that, after becoming widely recognized in the media and across the country as the "little guy" battling Monster Energy Company, he chose to publicly speak out against Monster Energy Company's actions, and to inspire others involved in similar battles to fight their own "monsters." His ability to be heard on such a grand scale was largely due to his recognizability as the opponent of Monster Energy Company, and the content of his message has always been directly related to Monster Energy Company's actions. *See* Defendant's website, attached as Exhibit B. In this way, the use of "MONSTERS" is necessary to convey and express Defendants' meaning.

When Defendants' "FIGHT MONSTERS" campaign was launched, public reception was overwhelmingly positive. Defendants soon realized that they had the opportunity to make an even greater societal impact. Ultimately, "FIGHT MONSTERS" became a broader campaign against bullying and injustice in all forms. Defendants began donating 10% of its profits to causes that fight such injustices, and to

**DEFENDANTS' CORRECTED OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANTS' FAIR USE DEFENSE**

promote a larger campaign of standing up to all forms of Monsters, both literal (such as Plaintiff Monster Energy Company) and figurative.[4]

The second factor in proving nominative fair use is that only the portions of Plaintiff's marks that are necessary were referenced or "named" by Defendants. Here, Defendants only used the word "monster," without any of the numerous other portions of Defendants' marks (for example, "ENERGY," "NITRO," "ULTRA," "REHAB," or any of the claw designs, color combinations, or other markings used by Plaintiff as source identifiers). Defendants used only that nominal portion of Plaintiff's marks sufficient to signal to the public that Defendants' campaign was against Monster Energy Company, and that Defendants were in a position to lead that campaign due to their experiences in their very public lawsuits with Monster Energy Company.

Finally, Defendants can easily demonstrate that they did nothing that would, in conjunction with the use of "FIGHT MONSTERS," suggest sponsorship or endorsement by Monster Energy Company. The opposite is true. By always using the word "FIGHT" in front of the word "MONSTERS," Defendants place themselves in a directly oppositional stance to Plaintiff. Further, by strongly criticizing Monster Energy Company on Defendants' website and in copy accompanying their use of "FIGHT MONSTERS," Defendants communicate their hostility towards, rather than their affinity or connection to, Monster Energy Company. No consumer reading Defendants' story or following Defendants' use of "FIGHT MONSTERS" would reasonably infer a relationship between Thunder Beast and Monster Energy Company other than one of ardent adversity.

---

[4] Defendants are unaware of any case law, and Plaintiff has not pointed to any, that requires the "naming" of a trademark owner to be exclusive in order for nominative fair use to be established. In other words, that "FIGHT MONSTERS" refers both to Monster Energy Company specifically and to the broader universe of monsters and other bullies generally should not preclude a finding a nominative fair use.

Plaintiff has not contravened any of the above points.[5] As such, the defense of fair use must remain available to Defendants at trial, where a reasonable jury may certainly find in Defendants' favor.

2. <u>Plaintiff is Not Entitled to Summary Judgment in its Favor as a Matter of Law and Public Policy</u>

Because Defendants have set forth sufficient evidence to prove their fair use defense, Plaintiff is not entitled to judgment as a matter of law. Moreover, public policy and constitutional supremacy demand that this issue not be summarily decided.

"FIGHT MONSTERS" is a comment on a matter of serious public interest and concern, and a criticism of the actions taken by Monster Energy Company and others like them. As such, "FIGHT MONSTERS" is a fundamentally fair use, protected by the First Amendment of the Constitution.

This type of nominative fair use, designed to convey a message of public interest and concern, has a long history of protection under the First Amendment. Indeed, Defendants' right to free speech in this context necessarily takes precedence in the balancing between trademark rights and the First Amendment. *See* McCarthy on Trademarks and Unfair Competition § 31:139 (5th edition) (discussing the balancing of trademark enforcement with free speech principles); William McGeveran, *Rethinking Trademark Fair Use,* 94 IOWA L. REV. 49, 98 (2008) (referring to the "First Amendment defense" for "expressive uses" of trademarks); *Rogers v. Grimaldi*, 875 F.2d 994, 997-1000 (2d Cir. 1989) (analyzing First Amendment's application to Lanham Act disputes when unauthorized use of trademark contains protected

---

[5] To the contrary, Plaintiff's arguments are confusing, inconsistent, and at times tend to actually support Defendants. For example, Plaintiff argues that Defendants' use of "MONSTERS" <u>does not refer to Monster Energy Company at all</u>. It is difficult to reconcile this position with Plaintiff's other argument that Defendants' use of "FIGHT MONSTERS" implies a connection or affiliation with Monster Energy Company to such a strong extent that confusion is likely to occur.

expression); *Brach Van Houten Holding, Inc. v. Save Brach's Coal. for Chi.*, 856 F. Supp. 472, 476 (N.D. Ill. 1994) (explaining First Amendment's relevance to Lanham Act disputes when unauthorized use of trademark contains communicative messages).

Using another's mark in order to critically comment upon or show opposition to the trademark owner, rather than in a manner to cause confusion or suggest sponsorship, is at the core of the legal doctrine of fair use.

Here, the evidence, exhibits and Defendants' declaration show that:

- This lawsuit has sparked widespread public interest;
- The purpose of the "FIGHT MONSTERS" slogan is noncommercial, and is designed to communicate a message of public concern; that is, that bullying and abusive practices will not be tolerated and can be overcome even by the "little guy";
- The use of "FIGHT MONSTERS" is clearly oppositional to Monster Energy Company, and not used in a comparative or confusing manner to suggest any type of association, sponsorship, or endorsement; and
- The use of "FIGHT MONSTERS" is protectable First Amendment speech, used to criticize and comment upon Plaintiff's actions, Defendants believe are abusive, unethical, and unjust.

By silencing Defendants on summary judgment, this Court runs the risk of constraining constitutionally protected expression in favor of statutory commercial rights. Such a result would be improper as a matter of both law and policy.

## IV.  CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court DENY Plaintiff's motion for summary judgment.

*Respectfully Submitted,*

Dated: August 23, 2019 **BARTON GILMAN, LLP**

By: */s/ Eve J. Brown*
Eve J. Brown, Esq.
Attorneys for Defendants

DATED: August 23, 2019 **BURKHALTER KESSLER CLEMENT & GEORGE LLP**

By: */s/ Daniel J. Kessler*
Daniel J. Kessler, Esq.
Amanda V. Dwight, Esq.
Attorneys for Defendants

# DECLARATION OF ELECTRONIC SERVICE

## Central District of California

Service of the attached documents was accomplished pursuant to Central District of California, Order Authorizing Electronic Filing, General Order No. 08-03 and Local Rule 5-3.3, which provide in part: "Upon the electronic filing of a document, a 'Notice of Electronic Filing' (NEF) is automatically generated by the CM/ECF system and sent by e-mail to all attorneys in the case who are registered as CM/ECF Users and have consented to electronic service. Service by this electronic NEF constitutes service pursuant to the Federal Rules of Civil and Criminal Procedure for all attorneys who have consented to electronic service."

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on August 23, 2019, at Irvine, California.

By: */s/ Daniel J. Kessler*
DANIEL J. KESSLER, ESQ.